**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 16-25203-CIV-WILLIAMS**

EIGHTEEN SEVENTY LP,
MARIE KENNEDY FOUNDATION,
AND PAUL L. KENNEDY,

Plaintiffs,

v.

STUART KINNEAR ROBERTSON,
MICHÈLE FLEURY ROBERTSON,
EAST PACIFIC GROUP LIMITED,
CRUPE FOUNDATION, ANDREAS R. BIHRER,
AND BIHRER RECHTSANWÄLTE AG,

Defendants.
_______________________________________________/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
**OR, ALTERNATIVELY, TO COMPEL ARBITRATION**

Plaintiffs Eighteen Seventy LP (Eighteen Seventy), the Marie Kennedy Foundation, and Paul L. Kennedy (Kennedy) purportedly all invested in the shares or debt of a Singaporean company headquartered in Switzerland, Crupe Pte Ltd. (Crupe), or its affiliate Crupe Framing AG (Crupe Framing). They brought this action alleging that Defendants deceived them into making these foreign investments so as to defraud them. Plaintiffs, however, omit, among other things, the investment documents evidencing their investments, the fact that since 2013 Kennedy has been a director of Crupe, or that there are other litigation and arbitration proceedings in Switzerland and Singapore concerning the very subject of this dispute. There's good reasons for these omissions. As will be seen below, the investment documents show, among other things, that the Plaintiffs' allegations have no factual or legal bases, should not be in this Court, and that Kennedy did not personally invest and, thus, has no standing to bring this action.

Accordingly, Defendants Stuart Kinnear Robertson (Robertson), Michèle Fleury Robertson (Michèle Robertson), East Pacific Group Limited (East Pacific), Crupe Foundation, Andreas G. Bihrer (Bihrer), and Bihrer Rechtsanwälte AG (the Bihrer Law Firm) (collectively, Defendants) move to dismiss Plaintiffs' Complaint, or to compel arbitration, on the following

grounds: (1) the Court lacks personal jurisdiction over any of the Defendants; (2) as to Bihrer and the Bihrer Law Firm and Eighteen Seventy, this action should be referred to arbitration; (3) under the forum non conviens doctrine, Switzerland is the appropriate forum; (4) Counts 3 and 4 must be dismissed; (5) Kennedy lacks standing, as he never made any of the alleged investments; and (6) Michèle Robertson must be dismissed from this case (the Motion).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.[1]

**1) <u>The Parties</u>.**

Plaintiff Eighteen Seventy is a Delaware limited partnership with its principal place of business in Wyoming. Cmpl. ¶ 2. Eighteen Seventy is in the business of making investments and is owned and operated by Kennedy and his siblings. Cmpl. ¶ 2. Plaintiff the Marie Kennedy Foundation is a Delaware foundation with its principal place of business in Wyoming. Cmpl. ¶ 3. Plaintiff Kennedy is an individual and allegedly resides in this District. Cmpl. ¶ 4.

Defendant Robertson is a resident of Switzerland and a dual citizen of Australia and Switzerland. Cmpl. ¶ 5; Declaration of Robertson ¶ 5, attached as Exhibit 1 (Robertson Dec.). Robertson has never been to Florida and has no contacts with Florida. Ex. 1, Robertson Dec. ¶¶ 8-15. Defendant East Pacific is a Hong Kong company that is owned by Robertson. Cmpl. ¶ 6; Ex. 1, Robertson Dec. ¶ 6. East Pacific has never conducted any business in Florida or the United States. Ex. 1, Robertson Dec. ¶¶ 10-15. Michèle Robertson is a citizen and resident of Switzerland. Declaration of Michèle Robertson ¶ 5, attached as Exhibit 2 (Michèle Robertson Dec.). Michèle Robertson is Robertson's wife. Cmpl. ¶ 6; Ex. 2, Michèle Robertson Dec. ¶ 6. The Crupe Foundation is a Swiss private charitable foundation. Cmpl. ¶ 8. Michèle Robertson is a trustee of the Crupe Foundation. Ex. 2, Michèle Robertson Dec. ¶ 3.

Bihrer is a citizen and resident of Switzerland. Cmpl. ¶ 9; Declaration of Bihrer ¶ 5 attached as Exhibit 3 (Bihrer Dec.). Bihrer is a Swiss attorney. Ex. 3, Bihrer Dec.¶ 6. Other than a holiday trip approximately 6-7 years ago, Bihrer has not been to Florida and has no contacts with Florida. Ex. 3, Bihrer Dec. ¶ 10. The Bihrer Law Firm is a Swiss law firm that is owned by

[1] Generally, on a motion to dismiss, the Court should accept as true the allegations in the Complaint, but that is not the case here. "[A] court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment." *Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x 915, 917 (11th Cir. 2009). All the documents attached to Defendants' Motion are central to Plaintiffs' claims, referred to by Plaintiffs, and cannot be disputed.

Bihrer. Ex. 3, Bihrer Dec. ¶ 2. The Bihrer Law Firm has never conducted any business in Florida or the United States. Ex. 3, Bihrer Dec. ¶¶ 11, 13, 14, 16, 17.

2) **Crupe and the Plaintiffs' Alleged Investments**.

In 2010, Robertson met several inventors who had invented a proprietary additive which enabled gypsum to be mixed with cement (the Crupe IP), which would, in turn, make it easier and faster to build houses. *See* Cmpl. ¶ 14. Crupe was founded in 2011 by Robertson, Neil Sunderland, Richard Jayson, James Wadham, and Christopher Savill to market and sell this proprietary additive. Ex 1, Robertson Dec. ¶ 17. The Crupe IP inventors did not give Crupe the Crupe IP. Rather, they assigned ownership to the Crupe Foundation which gave Crupe a license to market and sell the Crupe IP. As noted, Crupe is a Singaporean company that is headquartered in Switzerland. Through at least 2015, its shares were not sold or registered in the United States and Crupe did not do any business in the United States. Ex 1, Robertson Dec. ¶ 19.

In 2011, Crupe's founders sought investors for Crupe. One of the investors they met with was Kennedy and his family. Cmpl. ¶ 16. All of these investor meetings took place outside of the United States. Ex. 1, Robertson Dec. ¶ 20. Almost all of these initial meetings took place in Switzerland at Dominick Company Ltd., a private Swiss bank. Ex. 1, Robertson Dec. ¶ 20. Some of these meetings also occurred when Kennedy went on-site to Uruguay, Brazil, Bangkok, and China to conduct his due diligence of Crupe's operations. Ex. 1, Robertson Dec.¶ 20. At no point during these initial meetings did Michèle Robertson personally meet with Kennedy. Ex. 2, Michèle Robertson Dec. ¶ 16. In addition to these meetings, Kennedy and family received the Crupe Information Memorandum. Cmpl. ¶ 18. A copy of the Information Memorandum is attached as Exhibit 18 (for ease of reference, the exhibit numbers to this Motion correspond with the paragraph number in Plaintiffs' complaint that first refers to said exhibit).

After receiving the Information Memorandum and conducting significant due diligence, Eighteen Seventy made an investment of $3,130,000 in Crupe. Cmpl. ¶ 21. In order to do so, Eighteen Seventy signed an Investment Agreement and a Subscription Agreement in February 2012. Cmpl. ¶¶ 19-21. A copy of the Investment Agreement is attached as Exhibit 19. A partial copy of the February 2012 Subscription Agreement is attached as Exhibit 21.

After this initial investment, Kennedy became intimately involved in Crupe. For instance, he would attend Crupe's Board meetings as a guest of Crupe's Board. In one of those meetings, the Board specifically addressed Crupe's license agreement with the Crupe Foundation for the

Crupe IP. In or about October 2013, Kennedy became a member of Crupe's Board of Directors. Ex. 1, Robertson Dec. ¶ 21. By the end of 2015, Kennedy had become chairman of Crupe's Board of Directors, essentially kicked Robertson out of Crupe, and terminated Bihrer and the Bihrer Law Firm's representation of Crupe. Ex. 3, Bihrer Dec. ¶ 22; Ex. 1, Robertson Dec. ¶ 23.

As set out in Paragraph 22 of the Complaint, Plaintiffs allege they made the following additional investments, excluding Eighteen Seventy's above $3,130,000 investment:[2]

22a. July 2012: Eighteen Seventy invested $1,800,000 in Crupe A-1 Preference Shares. A copy of the July 2012 Subscription Agreement is attached as Exhibit 22a.

22b. October 2012: Eighteen Seventy Loaned Crupe $2,000,000, by providing security for a credit facility with UBS (the Credit Facility). A copy of the Term Sheet and Credit Facility are attached as Exhibit 22b.

22c-1. September 2013: Eighteen Seventy invested $500,000 in Crupe A-1 Preference Shares. Defendants are presently unable to locate copies of this investment agreement.

22c-2. September 2013: The Marie Kennedy Foundation loaned $420,000 to Crupe Framing. A copy of the September 2013 Loan Agreement between the Marie Kennedy Foundation and Crupe Framing is attached as Exhibit 22c-2.

22c-3. September 2013: The Marie Kennedy Foundation invested $150,000 in Crupe A-1 Preference Shares. While Defendants are presently unable to locate a complete copy of this subscription agreement, a partial copy of the Marie Kennedy Foundation September 2013 Subscription Agreement is attached as Exhibit 22c-3.

22d. December 2013: Kennedy and his family loaned $200,000 to Crupe. This is incorrect. Kennedy's own emails reflect that he did not make any such loan. A copy of these emails are attached as Exhibit 22d. The $200,000 was paid on behalf of his wife and children – not Kennedy personally. *See* Ex. 22d. Defendants are presently unable to locate copies of any loan agreements signed by Kennedy's wife or children.

22e. May 2014: Eighteen Seventy invested $1,000,000 in Crupe A-1 Preference Shares. A copy of the May 2014 Subscription Agreement is attached as Exhibit 22e.

22f. October 2014: Eighteen Seventy loaned Crupe $700,000 by providing additional security for the Credit Facility (the Additional Credit Facility). The Additional Credit Facility is attached as Exhibit 22f.

---

[2] While the investment documents include dates that differ from the alleged investment dates in the Complaint, Defendants have used the dates in the Complaint for purposes of this Motion.

22g. November 2014: Eighteen Seventy invested $300,000 in Crupe A-1 Preference Shares. Defendants are presently unable to locate the subscription agreement for this investment.

22h. May 2015: Eighteen Seventy loaned $200,000 to Crupe. While Defendants do have emails indicating that said loan was made, Defendants are presently unable to locate the loan documents for this loan.

22i. April 2016: Eighteen Seventy loaned $70,000 to Crupe. As Defendants were not involved with Crupe past 2015, they do not have any documents concerning loans made in 2016.

22j. July 2016: the Marie Kennedy Foundation loaned $35,000 to Crupe. As Defendants were not involved with Crupe past 2015, they do not have any documents concerning loans made in 2016.

**3) <u>The Other Lawsuits and Arbitrations</u>.**

After Kennedy threw Robertson out from Crupe and terminated Bihrer and the Bihrer Law Firm's representation of Crupe, the parties have engaged in legal proceedings throughout the world. Bihrer and the Bihrer Law Firm filed a court action against Crupe in Switzerland for, among other things, unpaid legal fees. Ex. 3, Bihrer Dec. ¶ 23. East Pacific commenced arbitration proceedings against Crupe in Switzerland seeking payment for unpaid fees. Ex. 1, Robertson Dec. ¶ 25. Crupe counterclaimed against East Pacific in that arbitration. Ex. 1, Robertson Dec. ¶ 25. While the details of that counterclaim are not yet clear, the essence of these allegations involve purported breaches of fiduciary duties which will likely substantially overlap with the alleged breaches of fiduciary duties set out in this case. Cmpl. ¶ 7; Ex. 1, Robertson Dec. ¶ 25. Finally, Crupe has filed an action in Singapore against Robertson, Michèle Robertson, and the Crupe Foundation regarding the central issue in this case – i.e., the transfer of the Crupe IP to the Crupe Foundation. Ex. 1, Robertson Dec. ¶ 26; Ex. 2, Michèle Robertson Dec. ¶ 19.

## II. MEMORANDUM OF LAW: THE COURT SHOULD EITHER DISMISS THE CASE OR COMPEL ARBITRATION.

**1) <u>The Court Lacks Personal Jurisdiction Over The Defendants</u>.**

**A. *Applicable Legal Standard*.**

In order to determine whether the Court has personal jurisdiction over the non-resident Defendants, the Court must first "determine whether the Florida long-arm statute [Fla. Stat. § 48.193] provides a basis for personal jurisdiction. If so, then we must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir.

1996). Plaintiffs bear the burden of proving that the Court may properly assert personal jurisdiction over the non-resident defendants, *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988), and jurisdiction over each defendant must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984). Assuming that a plaintiff's jurisdictional allegations are sufficient, "the burden shifts to the defendant to make a prima facie showing of the inapplicability of the [long-arm] statute." *Polskie Linie Oceaniczne v. Seasafe Transport A/S,* 795 F.2d 968, 972 (11th Cir. 1986). "If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id.*

**B. *Analysis*: *The Court Does Not Have Jurisdiction*.**

Plaintiffs generally allege that there is personal jurisdiction over the Defendants because they engaged in a "conspiracy" of conducting business and solicitation activities in Florida that injured the Plaintiffs in Florida. Cmpl. ¶ 12. Plaintiffs then make specific factual allegations regarding these alleged solicitation activities. Cmpl. ¶ 12(a)-(c). Plaintiffs do not state the legal basis under which they believe this Court has jurisdiction over the Defendants. *Id.*

**i. Analysis: The Long Arm Statute, Fla. Stat. § 48.193.**

Under Florida's long arm statute, a non-resident submits himself to specific jurisdiction in Florida for any cause of action arising from: (1) doing business in Florida, or (2) causing "injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury . . . : a. [t]he defendant was engaged in solicitation or service activities within this state . . ." Fla. Stat. § 48.193(1)(a)(1) and (6). Alternatively, a "nonresident defendant may be subject to general jurisdiction [in Florida] where he 'engaged in substantial and not isolated activity within this state' regardless of whether the claim arises from that activity.'" *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 258 (Fla. 4th DCA 2011) (citing and quoting Fla. Stat. § 48.193(2)). Plaintiffs have failed to sufficiently allege specific or general jurisdiction and the Defendants have rebutted the same.

**a) *There is no Specific Jurisdiction under Fla. Stat. § 48.193(1)(a)(1).***

As a preliminary matter, while Plaintiffs allege that Defendants engaged in business in Florida, they make no allegation that their causes of action arose from the Defendants' purported business in Florida. Cmpl. ¶ 12. This pleading flaw is fatal to their jurisdictional allegation under § 48.193(1)(a)(1). In addition, none of the real Plaintiffs in interest are Florida residents and,

therefore, no injury could have been caused in Florida. Eighteen Seventy is a Delaware limited partnership with its principal place of business in Wyoming. Cmpl. ¶ 2. The Marie Kennedy Foundation is a Delaware private foundation with its principal place of business in Wyoming. Cmpl. ¶ 3. There is no allegation that either of these two Plaintiffs is a Florida resident or have their place of business in Florida. As to Kennedy, he never personally invested in Crupe and, therefore, has no standing and suffered no damages. *Infra* pp. 18-19.

As to Defendants the Crupe Foundation, the Birher Law Firm, and East Pacific, there are no specific jurisdictional allegations that they did business in Florida. Cmpl. ¶ 12(a)-(c). Thus, the Plaintiffs have failed to satisfy their initial burden as to these Defendants. Moreover, even if Plaintiffs had made this initial showing, Defendants Crupe Foundation, the Birher Law Firm, and East Pacific have submitted evidence that rebuts this showing. None have ever owned or leased real property, or maintained an office or place of business in Florida or the United States. Ex. 1, Robertson Dec. ¶¶ 8-16, Ex. 3, Bihrer Dec. ¶¶ 9, 11-17, and Ex. 2, Michèle Robertson Dec. ¶¶ 10-15. Also, none have a bank account in Florida or the United States. Ex. 1, Robertson Dec. ¶ 13, Ex. 3, Bihrer Dec. ¶ 14, Ex. 2, Michèle Robertson Dec. ¶ 13.

The same holds true as to Defendants Robertson, Bihrer, and Michèle Robertson. First, Plaintiffs' allegations that these Defendants conducted business in Florida by virtue of purported communications and correspondence with Plaintiffs are insufficient. *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1327 (S.D. Fla. 2010) ("telephonic and electronic communications with individuals in the forum that are incidental to business conducted wholly outside of the forum are insufficient to trigger the transacting business requirement of the long-arm statute.") (citing *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.*A., 421 F.3d 1162, 1167 (11th Cir. 2005)). Second, even assuming that Plaintiffs have met their prima facie burden (which they haven't), the Defendants have submitted declarations rebutting that showing. None of the individual Defendants, Robertson, Bihrer, or Michèle Robertson, has ever resided, owned or leased real property, or maintained an office or place of business in Florida or the United States. Ex. 1, Robertson Dec. ¶¶ 8-16, Ex. 3, Bihrer Dec. ¶¶ 9-16, and Ex. 2, Michèle Robertson Dec. ¶¶ 10, 15. None have a bank account in Florida or the United States. Ex. 1, Robertson Dec. ¶ 13, Ex. 3, Bihrer Dec. ¶ 14, and Ex. 2, Michèle Robertson Dec. ¶ 13.

**b) *There is no Specific Jurisdiction under Fla. Stat. § 48.193(1)(a)(6).***

Like with their § 48.193(1)(a)(1) allegations, Plaintiffs do not allege that their causes of action arose from the Defendants' solicitation activities in Florida, as required under § 48.193(1)(a)(6). Cmpl. ¶ 12. This flaw is, again, fatal to their jurisdictional allegation. Defendants also note that none of the real Plaintiffs in interest are Florida residents and, therefore, no injury could have been caused in Florida. *Supra* p. 7.

As to Defendants the Crupe Foundation, the Birher Law Firm, and East Pacific, there are no specific jurisdictional allegations that they engaged in solicitation activities in Florida. Cmpl. ¶ 12(a)-(c). Thus, the Plaintiffs have failed to satisfy their initial burden as to these Defendants. Moreover, even if Plaintiffs had made this initial showing, these Defendants have provided evidence demonstrating that they did not conduct solicitation activities. Ex. 1, Robertson Dec. ¶¶ 10, 15, Ex. 3, Bihrer Dec. ¶¶ 12, 17, and Ex. 2, Michèle Robertson Dec. ¶¶ 10, 14.

As to Defendants Robertson, Bihrer, and Michèle Robertson, Plaintiffs do allege specific jurisdictional allegations that they engaged in solicitation activities in Florida. Cmpl. ¶ 12(a)-(c). These Defendants, however, have rebutted those allegations in their Declarations. For instance, none of them has engaged in solicitation activities in Florida. Ex. 1, Robertson Dec. ¶¶ 10, 15, Ex. 3, Bihrer Dec. ¶¶ 12, 17, and Ex. 2, Michèle Robertson Dec. ¶¶ 10, 14. In terms of communications and correspondence from the individual Defendants to Plaintiffs, Michèle Robertson only sent one email to Kennedy, without knowing where he was, and has no recollection of calling him. Ex. 2, Michèle Robertson Dec. ¶ 17. Bihrer only received calls from Kennedy and when Bihrer emailed him he did not know where Kennedy was. Ex. 3, Bihrer Dec. ¶ 21. Robertson also did not know where Kennedy was when he communicated with him. Ex. 1, Robertson Dec. ¶ 22.

Plaintiffs also attempt to use the individual Defendants alleged telephonic and electronic communications with Plaintiffs to show solicitation. Cmpl. ¶ 12(a)-(c). There are two problems for Plaintiffs. First, as noted above, it is not possible for Defendants Robertson, Bihrer, and Michèle Robertson to have communicated with Plaintiffs in Florida when neither Eighteen Seventy nor the Marie Kennedy Foundation are Florida residents and Kennedy is not a proper Plaintiff. Second, as noted *infra*, such communications are insufficient to establish jurisdiction. *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d at 1327. As Crupe is a Singaporean company headquartered in Switzerland that does no business in Florida, any communications by

Defendants Robertson, Bihrer, and Michèle Robertson to Plaintiffs regarding Crupe would have been incidental to Crupe's business, which is conducted outside of Florida.

**c) *There is no General Jurisdiction under Fla. Stat. § 48.193(2)*.**

As noted, a "nonresident defendant may be subject to general jurisdiction [in Florida] where he 'engaged in substantial and not isolated activity within this state' regardless of whether the claim arises from that activity.'" *Caiazzo*, 73 So. 3d at 258 (citing and quoting Fla. Stat. § 48.193(2)). This standard requires a "showing of 'continuous and systematic general business contacts' with the forum state." *Id.* Florida courts have found "continuous systematic business contacts" to confer general jurisdiction where a nonresident defendant's activities are extensive and pervasive, in that a significant portion of the defendant's business operations or revenue are derived from established commercial relationships in the state. *Id.* Such contacts have also been found where the defendant continuously solicits and procures substantial sales in Florida. *Trs. of Columbia Univ. v. Ocean World, S.A.*, 12 So. 3d 788, 792 (Fla. 4th DCA 2009).

Here, the Plaintiffs have not alleged that any of the Defendants is subject to general jurisdiction in Florida. Cmpl. ¶ 12. And, in any event, there can be no general jurisdiction over the Defendants because none of the Defendants conduct business operations in Florida or derive significant revenues from commercial relationships in Florida. Ex. 1, Robertson Dec. ¶¶ 8-16, Ex. 3, Bihrer Dec. ¶¶ 9-18, and Ex. 2, Michèle Robertson Dec. ¶¶ 10-15.

**ii. Analysis: Due Process Clause**

Due process requires that the foreign defendant either (1) have engaged in continuous and systematic activities in the forum ("general" jurisdiction), *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984), or (2) have committed some act "purposefully directed" at the residents of the forum, which results in injury arising out of that act ("specific" jurisdiction), *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Here, as just noted, the Plaintiffs have not alleged that any of the Defendants is subject to general jurisdiction in Florida -- because they cannot. *Supra* p. 9.

As to specific jurisdiction, courts apply a two-prong test to determine whether specific jurisdiction exists. First, a court must determine whether the defendant had the "minimum contacts" with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there."" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Second, assuming minimum contacts have been established, a court inquires whether "the

assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.,* 471 U.S. at 464 (internal quotations omitted). Here, neither prong is satisfied.

Determining if minimum contacts exist requires an examination of three factors: (1) the contacts must be related to the plaintiff's cause of action or have given rise to it, *Burger King,* 471 U.S. at 472; (2) the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws[,]" *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); (3) the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp.,* 444 U.S. at 297.

As to the first factor, as noted, there is no specific allegation that the Defendants' alleged contacts relate to the Plaintiffs' causes of action. *Supra* pp. 7-8. As to the second and third factors, the facts here do not demonstrate that any of the Defendants purposefully availed themselves of this forum or could reasonably anticipate being haled into court in Florida. None of the corporate Defendants is incorporated, licensed, or registered to do business in Florida. Ex. 1, Robertson Dec. ¶¶ 10-16, Ex. 3, Bihrer Dec. ¶¶ 9-18, and Ex. 2, Michèle Robertson Dec. ¶¶ 10-15. None direct any advertising or sales to Florida. Ex. 1, Robertson Dec. ¶¶ 10-16, Ex. 3, Bihrer Dec. ¶¶ 11, 16-17, and Ex. 2, Michèle Robertson Dec. ¶¶ 10-15. Similarly, none of the individual Defendants has ever resided, owned or leased real property, or maintained an office or place of business in Florida. Ex. 1, Robertson Dec. ¶¶ 8-16, Ex. 3, Bihrer Dec. ¶¶ 11, 13, 14, and Ex. 2, Michèle Robertson Dec. ¶¶ 8, 10, 12.

Even if the Court were to reach the second prong of the two-part test (which it should not), personal jurisdiction may not be asserted under circumstances that would offend "traditional notions of fair play and substantial justice." *Burger King Corp.,* 471 U.S. at 464 (internal quotations omitted). Courts consider several factors when making this determination, including the burden on a defendant, the forum state's interest in adjudicating the dispute, a plaintiff's interest in obtaining convenient and effective relief, interstate and international judicial systems' interest in obtaining the most efficient resolution of controversies, and procedural and substantive interests of other nations. *Burger King,* 471 U.S. at 477.

Here, it would be manifestly unfair to force Defendants, a Hong Kong company (East Pacific) and Swiss residents and corporations (Robertson, Bihrer, Michèle Robertson, the Bihrer Law Firm and the Crupe Foundation), to defend this lawsuit in Florida. Defendants would have

to litigate in a forum in which they have no offices and no representatives. Requiring Defendants to do so would obligate them to travel thousands of miles and to familiarize themselves with a foreign legal system. As in any case, the burden on the defendant is a "primary concern." *World-Wide Volkswagen,* 444 U.S. at 292.

The interests of Florida are limited to non-existent in this case, as Eighteen Seventy and the Marie Kennedy Foundation are not even Florida residents and the only connection between this lawsuit and Florida is Kennedy -- a person who has no standing who happens to possibly reside in this District. *Id.; Eaton Corp. v. Maslyn Holding Co.,* 929 F. Supp. 792 (D.N.J. 1996) (finding minimum contacts but holding that traditional notions of fair play and substantial justice required declining exercise of personal jurisdiction).

On the other hand, Switzerland has a considerable interest in adjudicating the rights and liabilities of its domestic corporations and citizens. *See Tonkon v. Denny's, Inc., Civ. A.* No. 86-1186, 1987 WL 8837, at *3 (E.D. Pa. Mar. 31, 1987) (foreign sovereign "has a strong interest in regulating the conduct of corporations in its country"). Moreover, any judgment rendered against the Swiss Defendants (Robertson, Bihrer, Michèle Robertson, the Bihrer Law Firm and the Crupe Foundation) in this matter will not be enforceable in Switzerland, pursuant to Article 149 of the Swiss Statute on Private International Law of 1989 (PILA). Indeed, Defendants will oppose and challenge recognition and enforcement of any United States decision in Switzerland and reserve all rights, including, but not limited to, those relating to the enforceability of any judgment rendered in the United States, pursuant to Article 149 of PILA.

Therefore, allowing Plaintiff to obtain a pointless judgment against these Defendants would run counter to the efficiency interests of this Court and the Swiss courts. Confronted with the same issue, the *Eaton Corp.* court declined jurisdiction, stating:

> Most striking is the utter inefficiency which would result were the interstate judicial system to become involved in adjudicating this controversy. Defendants submit *undisputed* expert testimony that a judgment rendered by a United States court in this action "would not be recognized nor enforceable in Switzerland." ... Thus, the court could spend countless hours on an effort that would have little or no meaningful effect on defendants in Switzerland. There simply cannot be a less efficient use of judicial resources.

929 F. Supp at 799 (emphasis in original) (citations omitted). So too here, the burden of requiring Defendants to litigate in a foreign court is severe and would give rise to substantial

inefficiency. Therefore, asserting personal jurisdiction over Defendants would also not comport with traditional notions of fair play and substantial justice.

**2) <u>Eighteen Seventy's Claims Against Bihrer and the Bihrer Law Firm Must Be Sent To Arbitration and the Defendants' Reserve Their Right to Compel Arbitration</u>.**

As noted, Plaintiffs filed this complaint based on thirteen investments and loans they made in, or to, Crupe or Crupe's affiliates. Cmpl. ¶¶ 18, 22 In doing so, they did not attach any of the relevant investment/loan documents between Eighteen Seventy and the Marie Kennedy Foundation, on the one hand, and Crupe or Crupe Framing, on the other hand. While the Defendants have presently been unable to locate all of the investment documents, they have attached the ones currently in their possession to this Motion. The Defendants are still attempting to locate the remaining documents. While Defendants did not want to move piecemeal in compelling arbitration, it is clear from the limited documents that Defendants have that Eighteen Seventy's claims against Bihrer and the Bihrer Law Firm must be sent to arbitration in Switzerland. The Defendants expressly reserve their right to later move to compel arbitration on the remaining claims as the facts develop.

**A. *Applicable Legal Standard*.**

Under the Federal Arbitration Act (FAA), "[a] court must consider three factors in determining a party's right to arbitrate: (1) whether a written agreement exists between the parties containing an arbitration clause; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived." *Solymar Investments, Ltd. v. Banco Santander S.A.*, No. 10-20695-CIV, 2011 WL 1790116, at *5 (S.D. Fla. Mar. 14, 2011), *report and recommendation adopted*, No. 10-20695-CIV, 2011 WL 1791290 (S.D. Fla. May 10, 2011). "[T]he FAA does not provide for the exercise of discretion by a court, but instead mandates that district courts stay or dismiss the action and direct parties to proceed to arbitration ... ." *Id.* (internal citations omitted).

**B. *Analysis: Part of This Case Should be Referred to Arbitration*.**

Eighteen Seventy alleges that in February 2012 it made its initial investment in Crupe for $3,130,000. Cmpl. ¶¶ 18, 21. As part of making that investment, Eighteen Seventy signed an Investment Agreement and February 2012 Subscription Agreement. Ex. 19, Investment Agreement; Ex. 20, Subscription Agreement. The Investment Agreement states that Eighteen Seventy and Bihrer are parties to the agreement. Ex. 19, Investment Agreement at p. 3. The Investment Agreement provides that it is governed by Swiss law, and also provides that:

> Any dispute(s) arising between the Parties out of or in connection with this Agreement (including its interpretation, closing, execution, binding effect, amendment, breach, termination or enforcement) shall be submitted to the exclusion of ordinary courts, to a single arbitration tribunal in accordance with the International Arbitration Rules of the Zurich Chamber of Commerce. The seat of the arbitration shall be the city of Zurich, Switzerland. The arbitration shall be conducted in the English language. The decision of the arbitration tribunal shall be final and binding.

Ex. 19, Investment Agreement ¶¶ 12.9-12.10.

In addition to this $3,130,000 February 2012 investment, in July 2012 Eighteen Seventy invested $1,800,000. Cmpl. ¶ 22a. Ex. 22a, July 2012 Subscription Agreement. That Subscription Agreement contains the exact same arbitration clause as the Investment Agreement. Ex. 22a, July 2012 Subscription Agreement ¶ 10. Moreover, the July 2012 Subscription Agreement specifically incorporates the Investment Agreement. Ex. 22a, July 2012 Subscription Agreement ¶ 4k. The same Investment Agreement in which Bihrer is a party. Accordingly, given that a written arbitration clause exists between the parties, that an arbitrable issue exists between Eighteen Seventy and Bihrer regarding Eighteen Seventy's allegations that Bihrer and the Bihrer Law Firm misled then into investing into Crupe, and that neither Bihrer nor the Bihrer Law Firm have waived their right to arbitration, Eighteen Seventy's claims against Bihrer and the Bihrer Law Firm[3] must be sent to arbitration. *Solymar Investments, Ltd.*, 2011 WL 1790116, at *16.

**C. *Defendants Reserve Their Right to Compel Arbitration*.**

As the Defendants are moving to dismiss on jurisdictional grounds and to dismiss frivolous claims, the Defendants expressly reserve their right to later move to compel arbitration. *See Halim v. Great Gatsby's Auction Gallery, Inc.,* 516 F.3d 557, 562 (7th Cir. 2008) ("[a] party does not waive its right to arbitrate a dispute by filing a motion to dismiss or a motion to transfer venue."); *accord Khan v. Parsons Global Servs., Ltd.,* 521 F.3d 421, 427 (D.C. Cir. 2008) ("[A] motion to dismiss may not be inconsistent with the intent to arbitrate, as where a party seeks the dismissal of a frivolous claim."); *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 888 (2d Cir. 1985) ("[A motion to dismiss] alone ... does not waive the right to arbitrate."); *Dumont v. Saskatchewan Gov't Ins. (SGI)*, 258 F.3d 880, 887 (8th Cir. 2001).

---

[3] Claims against the Bihrer Law Firm must also be sent to arbitration based on the Plaintiffs' allegations that the Bihrer Law Firm and Bihrer are one and the same (alter ego) and agents of one another. Cmpl. ¶ 10. *See Bd. of Trs. v. Citigroup Global Mkts., Inc.*, 622 F.3d 1335, 1342–43 (11th Cir. 2010) (agency theory of arbitration). While Bihrer and the Bihrer Law Firm vigorously dispute these allegations, Plaintiffs are bound by their own allegations.

**3) <u>Switzerland Is The Appropriate Forum; The Southern District of Florida Is Not</u>.**

**A. *Applicable Legal Standard*.**

A party who moves to dismiss for *forum non conveniens* "must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir.2001). Although "the private factors are 'generally considered more important' than the public factors," the court should "consider both factors in all cases." *Id.* (quoting 17 Moore's Federal Practice § 111.74[3][b] at 111–221 (3d ed.2000)).

**B. *Analysis: The Factors Favor Switzerland as the Forum for This Case*.**

**i. Adequate and Available Forum.**

"[The] '[s]uitability' of the alternative forum is not a 'high hurdle.'" *Lugones v. Sandals Resorts, Inc.*, 875 F. Supp. 821, 824 (S.D. Fla. 1995) (internal quotations omitted). The forum must be both available and adequate. *Leon*, 251 F.3d at 1311. A forum is available if it is able to assert jurisdiction over the action and if the parties will not be deprived of remedies or treated unfairly. *Beaman v. Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1376 (S.D. Fla. 2011). A defendant may meet its burden of demonstrating an available forum by indicating it is amenable to service of process or consenting to jurisdiction in the foreign forum. *Tyco Fire & Security, LLC v. Alcocer*, 218 F. App'x 860, 865 (11th Cir. 2007). Defendants stipulate that they would submit to the jurisdiction of a Swiss court and waive any statute of limitations defense attributable to the delay between the filing of this case and a reasonable time for refiling in Switzerland. Accordingly, Switzerland is an available forum. *Maxima Int'l, S.A. v. Interocean Lines, Inc.*, No. 16-CV-21233-Gayles, 2017 WL 346826, at *2-4 (S.D. Fla. Jan. 24, 2017) (not dismissing case, but finding that Peru was an available forum based on similar stipulation).

"A forum is considered adequate if it can provide relief to a plaintiff. The substantive law of the foreign forum does not need to be as favorable to the plaintiff as the law of the plaintiff's chosen forum. Rather, the plaintiff need only have an opportunity to obtain some relief." *Id.* at *3 (internal citations omitted). Here, other U.S. courts have found that Switzerland is an adequate forum in cases with similar allegations. *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 726 (S.D.N.Y. 2011) (loss of investment funds and allegations of fraud and misrepresentation against foreign defendants).

**ii. Public and Private Factors**.

"Private factors include access to proof, availability of compulsory process for the attendance of unwilling witnesses, the cost of obtaining witnesses, and any other practical issues that make the trial 'easy, expeditious and inexpensive.'" *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d at 1330. "Public factors include the forums' respective interests in hearing the case, the administrative burdens placed on the district court, the difficulty of resolving choice of law problems and the need to apply foreign law, and the possibility of imposing jury duty 'upon the people of a community which has no relation to the litigation.'" *Id.* at 1330-31 (internal quotations omitted). "No one factor has controlling weight because a proper analysis of the relevant factors will necessarily vary from case to case." *Id.*

To be sure, considering the private factors, some deference is given to the Plaintiffs' choice of forum. *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d at 1336. That deference, however, is not absolute and must be weighed against the other private factors. Here, the remaining private factors favor Switzerland. First, as many of the Defendants are Swiss and as Crupe is headquartered in Switzerland, the costs of obtaining theses witnesses for testimony will be far less expensive. Second, as this case centers around the Crupe IP and Crupe's financial condition, many of the relevant witnesses will be in Switzerland or Europe. As such, compelling these witnesses to testify here in Miami would be beyond this Court's reach.

As to the public factors, they also weigh in favor of Switzerland. As noted, the interests of Florida are limited in this case because plaintiffs Eighteen Seventy and the Marie Kennedy Foundation are not even Florida residents and the only connection between this lawsuit and Florida is that Kennedy, a person who has no standing, happens to possibly reside in this District. *Eaton Corp.,* 929 F. Supp. at 799 (holding that because none of the plaintiffs were from the forum state, the state's interest was "minimal to nonexistent"). On the other hand, Switzerland has a considerable interest in adjudicating the rights and liabilities of its domestic corporations and citizens, and alleged fraud relating to the purchase of Crupe securities, a company headquartered in Switzerland. *See Tonkon,* 1987 WL 8837, at *3 (foreign sovereign "has a strong interest in regulating the conduct of corporations in its country").[4]

---

[4] Given that there are prior and pending legal proceedings in Switzerland and Singapore, this Court should abstain from exercising jurisdiction under the principle of international comity. *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1305 (11th Cir. 2008).

**iii. Plaintiffs Can Reinstate Their Suit**.

Given that Defendants stipulate that they would submit to the jurisdiction of a Swiss court and waive any statute of limitations defense attributable to the delay between the filing of this case and a reasonable time for refiling in Switzerland, the plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

**4) Pursuant to Fed. R. Civ. P. 12(b)(6), Counts 3 And 4 Must Be Dismissed**.

In Count 3, Plaintiffs allege a violation of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 against Defendants Robertson, East Pacific, Bihrer, and the Bihrer Law Firm. Cmpl. pp. 37-38. In Count 4, Plaintiffs allege the Florida state law equivalent, Fla. Stat. § 517.301, against Defendants Robertson, East Pacific, Bihrer, and the Bihrer Law Firm. As set out below, both counts must be dismissed.

**A. *Applicable Legal Standard***.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cnty., Fla*., 21 F.3d 1531, 1534 (11th Cir. 1994). "A pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). While detailed factual allegations are not always necessary in order to prevent dismissal of a complaint, the allegations must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a court must accept as true a plaintiff's allegations, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

**B. *Analysis: Counts 3 and 4 Should be Dismissed***.

**i. Count 3 – 10b-5 Claim**.

In *Morrison v. National Australia Bank Ltd.,* 561 U.S. 247, 260 (2010), the Court held that § 10(b) of the Exchange Act applies only to (1) "transactions in securities listed on domestic exchanges" and (2) "domestic transactions in other securities." Thus, under *Morrison*, a plaintiff may only bring a cause of action for securities fraud when "the purchase or sale is made in the United States, or involves a security listed on a domestic exchange." *Id.* at 269-70.

Applying *Morrison's* two-prong test to Count 3 results in its dismissal. First, there is no allegation that Crupe is listed on any domestic U.S. exchange. Thus, Plaintiffs cannot pursue their § 10(b) claim under the *Morrison's* first prong. As to the second prong, to determine where a purchase or sale of securities took place, the Court looks to see where the transfer of title to the securities took place. *Quail Cruises Ship Mgmt Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 (11th Cir. 2011).

Here, the Plaintiffs acknowledge that Crupe is a Singaporean company that is headquartered in Switzerland. Cmpl. ¶ 1. There is no allegation in the complaint that Crupe does any business in the United States, that its securities are offered for sale in the United States, or that the closing or transfer of the Crupe securities at issue actually occurred in the United States. Despite these material factual omissions, Plaintiffs still alleged that they purchased Crupe's securities in the Southern District of Florida. Cmpl. ¶ 12. In making this bald allegation, Plaintiffs did not attach one document evidencing their alleged Crupe security purchases. And that's because these documents clearly reflect that the closing of Plaintiffs' purchases of Crupe's securities – which are in Singapore - was not made in the United States, but rather in Switzerland. *See, e.g.,* Exhibit 22(e) at p. 5 ¶ 2 ("Closing of this subscription for the [Shares] . . . will be completed at the office of Bihrer Attorneys at Law Ltd. in Zurich/Switzerland …"). Accordingly, because the allegations here "involve no securities listed on a domestic exchange, and all aspects of the purchases ... occurred outside the United States," *Morrison,* 561 U.S. at 273, this Court should dismiss Count 3. *See also Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 177 (S.D.N.Y. 2010) (dismissing securities action where plaintiffs purchased shares of company listed on Swiss exchange).

**ii. Count 4 – Florida's Blue Sky Laws**.

Almost twenty years ago, a Florida appellate court addressed the issue of whether Fla. Stat. § 517.301 applies to the sale of securities which "occurred entirely in another state." *Allen v. Oakbrook Sec. Corp.*, 763 So. 2d 1099, 1101 (Fla. 4th DCA 1999). There, the plaintiffs bought shares in a Florida corporation and subsequently brought an action under Fla. Stat. § 517.301 against the company and one of its officers. *Id.* at 1100. However, all of the plaintiffs' purchases were not made in Florida. *Id.* at 1100-01. The appellate court rejected the application of Fla. Stat. § 517.301, finding that such an application would violate the commerce clause. *Id.* at 1101 (citing *Arizona Corp. Comm'n v. Media Prods., Inc.,* 158 Ariz. 463, 763 P.2d 527, 531 (Ct. App.

1988)(extraterritorial application of a state's blue sky law would violate the Commerce Clause of the United States Constitution); *Cors v. Langham,* 683 F.Supp. 1056 (E.D. Va. 1988)(complaint did not state a claim under Maryland Securities Act because acts complained of took place in Virginia); *McCullough v. Leede Oil & Gas, Inc.,* 617 F.Supp. 384 (W.D. Okla. 1985)(Oklahoma Securities Act not applicable to sale conducted in another state)). As such, the appellate court affirmed the dismissal of the plaintiffs' complaint. *Id.*

Here, as shown above, just like in *Allen,* the sale and purchase of Crupe's securities did not occur in Florida. *Supra* p. 16. Accordingly, under Florida law and the commerce clause, Fla. Stat. § 517.301 does not apply and Count 4 must be dismissed. *Allen*, 763 So. 2d at 1100-01. *See also In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 755 F. Supp. 2d 857, 873-888 (S.D. Ohio 2010) (reaching the same conclusion as to Ohio's securities laws).

**5) <u>Kennedy Has No Standing Because He Did Not Personally Make Any of The Alleged Investment or Loans</u>.**

**A. *Applicable Legal Standard*.**

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). To make this showing, a plaintiff must show that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012).

**B. *Analysis: Kennedy Lacks Standing*.**

In their complaint, the Plaintiffs set out the various investments they made in Crupe. Cmpl. ¶¶ 21-22. As is plain from the complaint, all but one investment was made by either Eighteen Seventy or the Marie Kennedy Foundation. There is only a single allegation that Kennedy, personally, invested in Crupe. Cmpl. ¶ 22(d) ("In December 2013, Kennedy and family loaned $200,000 to Crupe."). However, the documents relating to this investment, i.e., Kennedy's own emails, show that this loan was made by Kennedy's wife and his children – not by Kennedy personally. *See* Ex. 22d.

It is axiomatic that in order to have standing to pursue claims relating to the sale and purchase of securities, the plaintiff must have actually purchased the securities or made the investment. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1267 (11th Cir. 2006) (noting that

"[s]tanding is established by allegations that plaintiffs bought or sold shares of the stock in question within a reasonable period of time after the allegedly fraudulent conduct occurred to support an inference of reliance," and finding that plaintiff lacked standing) (citation omitted); *accord Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 480-81 (S.D.N.Y. 2010) (dismissing causes of action concerning funds in which plaintiffs did not invest). Otherwise, the plaintiff would not have suffered any Article III injury.

Here, because the relevant documents show that Kennedy did not personally invest in Crupe, *See* Ex. 22d, he lacks standing to be a plaintiff in this action. And Kennedy cannot escape this result by asking the Court to bury its head and ignore the attached documents. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007) (considering insurance policy attached to defendant's motion to dismiss and finding that plaintiff lacked standing to pursue its claims). Accordingly, the Court should dismiss Kennedy as a plaintiff from this action.

**6) <u>Michèle Robertson Must be Dismissed</u>.**

**A. *Applicable Legal Standard*.**

The same standard applicable to the Defendants' request to dismiss counts 3 and 4 applies here. *Supra*, p. 16.

**B. *Analysis: Plaintiffs Have Not Stated a Cause of Action Against Michèle Robertson.***

In counts one and two, Plaintiffs bring a claim for common law fraud and negligent misrepresentation against all of the Defendants, including, Michèle Robertson. Plaintiffs do not allege any misrepresentations by her. Rather, they allege that she had a duty to disclose "as a result of her active participation in the theft of CRUPE assets and as a direct beneficiary of the fraud described herein." Cmpl. ¶ 6. In other words, it's not what Michèle Robertson said, it's what she didn't say.

The elements of common law fraud are: "(1) A false statement of fact; (2) known by the defendant to be false at the time is was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage to the plaintiff." *Vance v. Indian Hammock Hunt & Riding Club, Ltd.*, 403 So. 2d 1367, 1372 n. 7 (Fla. 4th DCA 1981). The elements of a negligent misrepresentation claim are: "(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer

intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation." *Coral Gables Distrib., Inc. v. Milich,* 992 So. 2d 302, 303 (Fla. 3d DCA 2008).

However, for a claim of common law fraud or negligent misrepresentation to stand based on an omission, as Plaintiffs have alleged against Michèle Robertson, there must also be an allegation that the defendant owed a duty to disclose to the plaintiff and that such a duty arises due to a fiduciary or other relation of trust or confidence between the parties. *Friedman v. Am. Guardian Warranty Services, Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003); *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1351–52 (S.D. Fla. 2005); *TransPetrol Ltd. v. Radulovic,* 764 So. 2d 878, 879–80 (Fla. 4th DCA 2000) ("a defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose" and such a duty arises due to a fiduciary or other relation of trust or confidence).

Here, there is no confidential, contractual, or fiduciary relationship alleged between Michèle Robertson and Plaintiffs. *Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1348 (M.D. Fla. 2010). Accordingly, Plaintiffs' claims for common law fraud and negligent misrepresentation "by omission must be dismissed" against Michèle Robertson. *Behrman*, 388 F. Supp. 2d at 1351–52. *Friedman*, 837 So. 2d at 1166.

## III. CONCLUSION.

Wherefore, Defendants respectfully request that the Court dismiss this case or refer it arbitration for the reasons set forth above and grant any other relief this Court deems just and proper.

Date: May 12, 2017

Respectfully submitted,

Eduardo Palmer, P.A.
255 Aragon Avenue, 2nd Floor
Coral Gables, Florida 33134
Telephone: (305) 476-1100
Facsimile: (305) 476-1300

By: *s/ Eduardo Palmer*____________
EDUARDO PALMER
Fla. Bar No. 0562548
OMAR K. IBRAHEM
Fla. Bar No. 059045

**CERTIFICATE OF SERVICE**

I certify that on May 12, 2017, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document was served on all counsel of record or *pro se* parties in the service list below, either via transmission of Notice of Electronic Filing generated by CM/ECF, or via other means if required.

By: *s/ Eduardo Palmer*____________
EDUARDO PALMER

**SERVICE LIST**

*Via CM/ECF*

Hughes Hubbard & Reed LLP

Aviva L. Wernick
Email: aviva.wernick@hugheshubbard.com
Jeffrey B. Goldberg
Email: jeffrey.goldberg@hugheshubbard.com
201 S. Biscayne Boulevard
Miami, Florida 33131-4332
Tel.: (305) 358-1666
Fax: (305) 371-8759

Edward J.M. Little
Email: edward.little@hugheshubbard.com
One Battery Park Plaza
New York, New York 10004-1482
Tel.: (212) 837-6400
Fax: (212) 299-6400

*Counsel for Plaintiffs*