# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-25203-CIV-WILLIAMS/TORRES

**EIGHTEEN SEVENTY LP, MARIE KENNEDY FOUNDATION AND PAUL L. KENNEDY,**

                              Plaintiffs,

          **v.**

**STUART KINNEAR ROBERTSON, MICHÈLE FLEURY ROBERTSON, EAST PACIFIC GROUP LIMITED, CRUPE FOUNDATION, ANDREAS R. BIHRER AND BIHRER RECHTSANWÄLTE AG,**

                              Defendants.

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

Plaintiffs Eighteen Seventy LP ("Eighteen Seventy"), Marie Kennedy Foundation ("Marie Kennedy"), and Paul L. Kennedy ("Kennedy") ("collectively "Plaintiffs"), submit this Opposition (the "Opposition") and supporting declarations of Kennedy, Simon Peat and Mazyar Taennler, in response to the Motion to Dismiss (ECF No. 18) filed on May 12, 2017, by Defendants Stuart Kinnear Robertson ("Robertson"), Michele Fleury Robertson ("Fleury"), East Pacific Group Limited ("East Pacific"), Crupe Foundation, Andreas Bihrer ("Bihrer), and Bihrer Rechtsanwälte, AG (the "Bihrer Firm") (collectively the "Defendants").

### Preliminary Statement

This action concerns Defendants fraudulently inducing Plaintiffs to purchase securities of CRUPE Pte Ltd. ("CRUPE" or the "Company") by sending various communications and agreements to Plaintiffs in Florida.  As a result of the misrepresentations in these and other communications, Plaintiffs loaned money and purchased securities of CRUPE while Kennedy, a Florida resident acting on behalf of Plaintiffs Eighteen Seventy and Marie Kennedy, was in Florida.  Despite Defendants' contentions to the contrary, because Kennedy resides in Florida and he invested in the Defendants' scheme, he has standing to bring this case, and Defendants

subjected themselves to this Court's jurisdiction by committing torts and causing harm in Florida.  Moreover, this Court has a significant motivation to protect a resident such as Kennedy from the tortious conduct of the non-resident Defendants.  For this reason and others addressed below, this Court is the proper forum for this action.

Defendants miss the mark in their other arguments as well.  Although Defendants contend that claims against two of the Defendants must be handled via arbitration, the arbitral provision does not apply to the parties here and the scope of the provision does not cover this cause of action.  Furthermore, Plaintiffs' purchase of CRUPE securities from Defendants in Florida and elsewhere in the United States belie Defendants' argument that United States and Florida securities law do not apply.  Finally, Defendant Fleury knowingly participated with other Defendants, including her husband Defendant Robertson, in a conspiracy to defraud and breach their fiduciary duties to Plaintiffs, and is likewise liable for the fraud and negligent misrepresentation claims.

Accordingly, Defendants' Motion to Dismiss should be denied as a matter of law.

## Procedural and Factual Background

This action is centered on Defendants' fraudulent and negligent efforts to convince Plaintiffs to invest in CRUPE, a company founded to develop and sell a unique building material.  Compl., ¶ 14, 16.  The patents related to that building material constitute the most valuable part of CRUPE intellectual property ("IP"), which was Crupe's most valuable and nearly exclusive asset.  *Id.* at ¶ 15.  Robertson, Fleury, Bihrer and other Defendants, however, concocted a plan to steal CRUPE's IP by transferring it to Defendant Crupe Foundation.[1]  *Id.* ¶ 16.  Before stealing the CRUPE IP, Defendants sought funding from Plaintiffs and other investors.  *Id.*

Defendants accomplished their goal of deceptive inducement by exchanging hundreds of communications with Plaintiffs via mail, email and telephone calls.  *Id.* ¶ 12.  Those communications included a litany of false statements, or statements Defendants should have known were false.  *Id.* ¶ 16.  Defendants' numerous misrepresentations, which resulted in

---

[1] In their Motion to Dismiss, Plaintiffs state that "[t]he Crupe IP inventors did not give Crupe the Crupe IP.  Rather, they assigned ownership to the Crupe Foundation which gave Crupe a license to market and sell the Crupe IP."  Motion to Dismiss, at 3.  Defendants, however, fail to cite any support for this contention.  This and other unsupported factual contentions are improper in a Motion to Dismiss and must be disregarded.

Plaintiffs investing in CRUPE, primarily occurred while Kennedy, a Florida resident acting on behalf of Eighteen Seventy and Marie Kennedy, was in Florida.  For example:

- In February 2012, Defendants sent an Information Memorandum and Subscription Documents to Kennedy in Florida that contained numerous misrepresentations.  *See id.*, ¶ 18, 19; Declaration of Kennedy, dated June 9, 2017, attached hereto as Exhibit A, ¶ 4 & Exs. 2, 3.

- In September 2012, Robertson distributed a report to Kennedy in Florida that deceptively suggested a large order for CRUPE was imminent.  *See* Compl., ¶ 23h; Kennedy Decl., ¶ 11 & Ex. 16.

- In October 2012, Defendants delivered a Term Sheet to Kennedy in Florida for a $2,000,000 loan from Eighteen Seventy to CRUPE, and Kennedy signed that document in Florida.  *See* Compl., ¶ 22b; Kennedy Decl., ¶¶ 5 & Exs. 5, 6.

- On April 4, 2013, Robertson distributed an updated Information Memorandum to Kennedy in Florida.  *See* Compl., ¶ 23i; Kennedy Decl., ¶ 12 & Ex. 17

- On May 9, 2013, Robertson emailed Kennedy in Florida with updates about CRUPE.  *See* Compl., ¶ 27; Kennedy Decl., ¶ 24 & Ex. 29.

- On November 15, 2013, Robertson distributed a forecast for sales in 2014 to Kennedy in Florida.  *See* Compl., ¶¶ 23o, 23p, 23q; Kennedy Decl., ¶ 13 & Ex. 18.

- On November 29, 2013, Kennedy entered into a Bridge Loan Agreement in which he agreed to loan CRUPE $100,000.  Defendants knew of the connection to Florida because Kennedy's Florida address is listed in the Bridge Loan Agreement, and Kennedy funded the loan on December 3, 2013 while in Florida.  *See* Compl., ¶ 22d; Kennedy Decl., ¶ 6 & Exs. 8, 9.

- On December 15, 2013, Robertson distributed a letter to Kennedy in Florida in which he boasted about CRUPE.  *See* Compl., ¶ 23r; Kennedy Decl., ¶ 14 & Ex. 19.

- On December 24, 2013, Robertson emailed CRUPE investors, including Kennedy in Florida, about investing further in the Company.  *See* Compl., ¶ 23s; Kennedy Decl., ¶ 15 & Ex. 20.

- In February 2014, Robertson emailed Kennedy in Florida with a false report that CRUPE had substantial new contracts.  *See* Compl., ¶ 23u; Kennedy Decl., ¶ 16 & Ex. 21.

- On March 3, 2014, when Robertson distributed to Eighteen Seventy an order book with false information, Kennedy was in Florida.  *See* Compl., ¶ 23w; Kennedy Decl., ¶ 18 & Ex. 23.

- On March 10, 2014, Robertson emailed Eighteen Seventy via Kennedy who was in Florida, with a false and exaggerated claim about CRUPE's order book.  *See* Compl., ¶ 23v; Kennedy Decl., ¶ 17 & Ex. 22.

- On March 31, 2014, Robertson distributed a "First Quarter Report" to Kennedy in Florida.  *See* Compl., ¶¶ 23y; Kennedy Decl., ¶ 19 & Ex. 24.

- On April 10, 2014, Robertson emailed Kennedy in Florida with further false projections for CRUPE.  *See* Compl., ¶ 23bb; Kennedy Decl., ¶ 20 & Ex. 25.

- On May 15, 2014, Robertson emailed Kennedy in Florida, describing an improved outlook for CRUPE.  *See* Compl., ¶¶ 23dd, 23ee; Kennedy Decl., ¶ 21 & Ex. 26.

- On May 23, 2014, Robertson sent a letter to CRUPE shareholders, including Kennedy who was in Florida, and that same day Eighteen Seventy purchased $1,000,000 in CRUPE shares.  Robertson also emailed Kennedy in Florida on May 28, 2014 with further updates.  *See* Compl., ¶¶ 23ff; Kennedy Decl., ¶ 22 & Exs. 4, 27.

- On October 13, 2014, Robertson falsely reported by email to Kennedy in Florida that CRUPE had signed new orders and that large companies were switching to CRUPE for future projects.  *See* Compl., ¶ 23ll; Kennedy Decl., ¶ 23 & Ex. 28.

- On October 2 and 3, 2015, Kennedy signed documents while in Florida that converted the debt of Crupe Framing held by Eighteen Seventy and Marie Kennedy into shares of CRUPE.  *See* Kennedy Decl., ¶ 25 & Ex. 30.

- Kennedy, acting on behalf of Eighteen Seventy, was also in Florida in February 2012, May 2013, November 2014 and April 2016, when Eighteen Seventy funded investments in CRUPE, totaling over $4,000,0000, in response to Defendants' misrepresentations.  *See* Compl., ¶¶ 21, 22e, 22g; Kennedy Decl., ¶¶ 4, 8-10 & Exs. 3, 4, 13-15.

In addition to these various communications, Kennedy also attended many meetings of the CRUPE Board of Directors via conference call while in Florida.  Compl., ¶ 12; Kennedy Dec. ¶ 26.  By that time it was common knowledge that Kennedy lived in Florida, as he had discussed it when first meeting Robertson, Bihrer and others, and on various conference calls with the Board of Directors.  Kennedy Decl. ¶ 26.

Following Plaintiffs' discovery of Defendants' fraud in 2015 and 2016, legal proceedings took place in Switzerland and Singapore involving CRUPE (which is not a party to this action), and certain Defendants.  Declaration of Mazyar Taennler, dated June 16, 2017, attached hereto as Exhibit B, ¶¶ 5, 6.  The Singapore action, commenced by CRUPE against Robertson, Fleury and Crupe Foundation to recapture CRUPE's stolen IP, has not progressed because, *inter alia*, the

defendants to that action have been avoiding service. *Id.* at ¶ 6. In addition, the Switzerland arbitration brought by East Pacific against CRUPE is being terminated because claimant declined to pay the arbitration fees. *Id.* at ¶ 5. Furthermore, it has become clear that Robertson, an Australian citizen, and his wife Fleury, have moved to Australia. *Id.* at ¶ 7; Compl. ¶ 5; Mot. to Dismiss at 2.

## Argument

### A. Standard of Review

In deciding a motion to dismiss, the court must accept all factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). For most claims, the Federal Rules of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotations marks omitted). Rule 8(a)(2) "does not impose a probability requirement at the pleading stage," but "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the necessary element. It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render [the necessary element] plausible." *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1317 (S.D. Fla. 2009) (internal quotation marks omitted) (citing *Twombly*, 550 U.S at 570). With respect to Plaintiffs' fraud claim, Rule of Civil Procedure 9(b) requires that "all averments of fraud . . . shall be stated with particularity," however, this "heightened pleading standard may be applied less stringently . . . when specific factual information [about the fraud] is peculiarly within the defendant's knowledge or control." *Hill v. Morehouse Med. Assoc., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (internal quotation marks omitted).

The existence of personal jurisdiction is a question of law. *Diamond Crystal Brands Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the extent that a Florida court may, so long as the exercise is consistent with federal Due Process requirements. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Although a defendant may challenge the plaintiff's assertions through affidavits, documents or testimony, the plaintiff may

then rebut the defendant's claims via "affidavits, documents, or testimony." *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Bernardele*, 608 F. Supp. 2d at 1318, *citing Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). If a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing or oral argument, "the plaintiff must [only] establish a prima facie case of personal jurisdiction over a nonresident defendant." *Id.*

**B. <u>Kennedy Has Standing Since He Personally Invested in CRUPE</u>**

For a plaintiff to have standing, it must show that "(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012). In addition, to have standing for claims involving the sale of securities, the plaintiff must have purchased the securities or made the investment. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1267 (11th Cir. 2006).

Here, Defendants concede that the Complaint included an allegation that Kennedy personally invested in CRUPE; yet, Defendants argue that Kennedy did not personally invest - that only Kennedy's wife and children actually loaned money to CRUPE. Mot. to Dismiss at 18. In a failed attempt to support this argument, Defendants merely attach email correspondence showing that, at one point, Kennedy contemplated providing financing to CRUPE in the name of his wife and children. *Id.*, Ex. 22d. Defendants do not provide any evidence to show that this in fact occurred, and that Kennedy did not personally invest in CRUPE. That is because Defendants' contention is unfounded.

The plain language of the Complaint, and the declarations and documents submitted in support of this Opposition directly contradict Defendants' contention. The Complaint states that it was not simply Kennedy's family that invested in CRUPE, but "Kennedy and family" that "loaned $200,000 to CRUPE." Compl., ¶ 22d. As described in Kennedy's Declaration, and as demonstrated in the supporting documents thereto, although at one point Kennedy contemplated donating the loans to his children's trusts, he never effectuated that plan and it was Kennedy who personally provided $100,000 of the $200,000 loan, while his wife provided the other $100,000. Kennedy Dec., ¶¶ 6, 7 & Exs. 6, 7. Kennedy received a Payment Slip on December 5, 2013,

documenting his portion of the loan, as well as an email from CRUPE on December 10, 2013 stating "I herewith confirm the receipt of the USD 100k you've announced last week." *Id.* ¶ 6 & Ex. 9.  Kennedy even wrote an email directly to Bihrer describing how the $200,000 loan was made by him and his wife "each 50%, but through separate and not joint accounts." *Id.* ¶ 7 & Ex. 12.  Kennedy thereafter converted that loan into shares of CRUPE.  *Id.* ¶ 7.  CRUPE's list of current shareholders also demonstrates that Kennedy is a shareholder.  Declaration of Simon Peat dated June 16, 2017, attached hereto as Exhibit C, at ¶ 4 & Ex. A thereto.

Accordingly, the evidence demonstrates that Kennedy personally invested in CRUPE and has standing to pursue his claims against Defendants.

### C.  This Court has Personal Jurisdiction Over Defendants Due to Their Tortious Acts In Florida

Courts undertake a two-step inquiry to determine whether personal jurisdiction exists: jurisdiction must (1) be appropriate under either the specific or general jurisdiction prongs of Florida's long-arm statute, and (2) not violate the Due Process Clause of the Fourteenth Amendment.  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274-75 (11th Cir. 2009).

#### 1.  *The Court Has Specific Jurisdiction Under the Tortious Act in the State Prong of Florida's Long-Arm Statute*

Florida's long-arm statute provides for specific jurisdiction over a non-resident defendant where a claim arises from one of the enumerated acts set forth in section 48.193(1) of the Florida Statutes.  Fla. Stat. § 48.193(1)(a)(2).  "If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction-generating event." *Allen Sys. Grp., Inc. v. Avon Prods., Inc.*, No. 2:16-cv-121-ftm-28mrm, 2016 WL 7374512 at *3 (M.D. Fla. Dec. 20, 2016) (*quoting Thomas v. Brown*, 504 F. App'x. 845, 847 (11th Cir. 2013)).

Pursuant to Fla. Stat. § 48.193(1)(a)(2), a court has specific jurisdiction over a defendant where a cause of action arises from defendant "[c]omitting a tortious act within this state." *Id.* Courts have interpreted this to mean that specific jurisdiction exists when a non-resident defendant either "committed a substantial aspect of the alleged tort in Florida" or committed a tort outside the state that caused injury within the state.  *Bernardele*, 608 F. Supp. 2d at 1324-25; *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1220 (11th Cir. 1999) (recognizing court

precedent extending long-arm jurisdiction over defendants who committed a tort outside the state that resulted in harm inside Florida).

Here, the tort claims asserted against Defendants – including fraud and negligent misrepresentation – qualify as torts under Fla. Stat. § 48.193(1)(a)(2), *see Bernadele*, 608 F. Supp. 2d at 1324, and Plaintiffs have demonstrated that there is specific personal jurisdiction over the Defendants under both constructions of the tortious activity provision.

        i.   *A Substantial Aspect of the Torts Were Committed in Florida*

To commit a tortious act within Florida, a defendant's physical presence is not required. *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002). "[T]elephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193[(1)(a)(2)] if the alleged cause of action arises from the communications[.]" *Id*; *see also Acquadro v. Bergeron*, 851 So.2d 665, 670-71 (Fla. 2003). A claim for the tort of fraudulent inducement requires (1) a false statement of material fact; (2) the maker of the false statement knew or should have known the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment. *Prieto v. Smook, Inc.*, 97 So.3d 916, 917 (Fla. 4th DCA 2012). A claim for negligent misrepresentation involves the same elements, but allows for liability even if the defendants ought to have known the falsity of the representation in question. *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1498 (M.D. Fla. 1993).

The allegations of the Complaint and the declarations and supporting documents demonstrate that a substantial aspect of the torts of fraud and negligent misrepresentation were committed within Florida. The Complaint itself states that Defendants caused injury to Plaintiffs "within the State of Florida" as a result of hundreds of communications with Plaintiffs via mail and email, and dozens of phone calls and other oral and electronic communications. Compl., ¶ 12. Those communications, which were directed by Defendants to Kennedy while he was in Florida, include a litany of false statements, and form the basis of Plaintiffs' claims that Defendants engaged in tortious activity in Florida. For example, Robertson and Bihrer conducted numerous meetings of the CRUPE Board of Directors as to which Kennedy participated by phone while he was in Florida, and Defendants knew he was there. *Id.*; Kennedy Dec. ¶ 26. Critically, Defendants sent Kennedy an Information Memorandum while he was in Florida that included a variety of false representations or omissions of material fact concerning

CRUPE.  *See* Compl., ¶ 18; Kennedy Decl., ¶ 4 & Ex. 2, 3.  As a result of these misrepresentations and omissions, Eighteen Seventy invested over $3 million in CRUPE shares on February 15, 2012, at which time Kennedy, acting on behalf of Eighteen Seventy, was in Florida.  *See* Compl., ¶ 21; Kennedy Decl, ¶ 4 & Exs. 3, 4.  Plaintiffs invested millions more in CRUPE as a result of these misrepresentations, including (1) a $2,000,000 loan in November of 2013, for which Kennedy received and signed a Term Sheet while in Florida, and (2) a $200,000 loan for which Kennedy and his wife invested $100,000 each, whereby Kennedy sent $100,000 to CRUPE while in Florida in December 2013.  *See* Compl., ¶¶ 22b, 22d; Kennedy Decl., ¶¶ 5-7 & Ex. 5-9.

        Accordingly, Defendants committed a substantial part of the activities that form the basis of Plaintiffs' tort claims in Florida, and these activities were essential to the success of Defendants' scheme of fraud and negligent misrepresentation.  This Court, therefore, has specific jurisdiction pursuant to the "tortious act" provision of Florida's long-arm statute.  *See* Fla. Stat. § 48.193(1)(a)(2); *see also Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1292, 1297-98 (S.D. Fla. 2009) (numerous telephone calls and emails conferred specific jurisdiction under long-arm statute if plaintiff could prove that defendant committed fraud in the inducement or negligent misrepresentation); *Walack v. Worldwide Mach. Sales, Inc.*, 278 F. Supp. 2d 1358, 1366-67 (M.D. Fla. 2003) (court had specific jurisdiction over defendant pursuant to Florida long-arm statute where defendant made material misrepresentations during the course of telephone conversations into Florida); *Caiazzo v. Am. Royal Arts Corp.,* 73 So.3d 245, 258 (Fla. 4th DCA 2011).

        *ii.   Torts Caused Injury in Florida*

        There is an additional ground for specific jurisdiction over Defendants under Fla. Stat. § 48.193(1)(a)(2)*,* because, as alleged in the Complaint, Defendants' actions "caused injury to the plaintiffs within the State of Florida arising out of acts and omissions by the defendants outside the State of Florida."  Compl., ¶ 12.  Indeed, as a result of Defendants' tortious activities, described *supra,* which were directed to Kennedy, a Florida resident, Kennedy invested in CRUPE and suffered harm in Florida as a result.  Compl., ¶¶ 37, 41, 48, 55; s*ee Elandia Int'l., Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1329-30, 1337-39 (S.D. Fla. 2010) (holding that where a defendant commits a tort outside of Florida and the plaintiff has its principal place of business in Florida, the harm is suffered by plaintiff in Florida for purposes of Florida's long-arm statute).

### 2.   *Exercising Jurisdiction Over Defendants Satisfies Due Process*

In addition to jurisdiction over Defendants under Florida's long-arm statute, due process is satisfied so long as "minimum contacts" exist between Defendants and Florida and exercising jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Posner*, 178 F.3d at 1220.

The Eleventh Circuit uses a three-prong test to determine whether the minimum contacts with the forum state are sufficient:  (1) the contacts must be related to the plaintiffs cause of action; (2) the defendant must purposefully direct activities at Florida or purposefully avail itself of the privilege of conducting activities within Florida; and (3) the defendant's contacts must be such that the defendant should reasonably anticipate being haled into court there.  *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993); *see also Bernadele*, 608 F. Supp. 2d at 1326.  The Eleventh Circuit has held that the commission of an intentional tort by a non-resident defendant expressly aimed at a resident, the effects of which were suffered by the resident in the forum state, satisfies the 'effects test' established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).  *Licciardello*, 544 F.3d at 1287-88.  The "effects test" provides that due process is satisfied when the plaintiff brings suit where they suffered the "effects" or the brunt of the harm caused by the defendant's intentional tortious activity.  *Id.* at 1285-87.

Here, the minimum contacts test has been more than satisfied.  As described in section C1, *supra*, Defendants purposely directed activities to Florida over a 4 year period and such contacts and communications with Kennedy, a Florida resident, while he was in Florida, form the basis for Plaintiffs' claims.  Indeed, based upon Defendants' misrepresentations made to Kennedy while he was in Florida, Kennedy executed investment agreements in Florida, funded the purchase of shares from Florida, and, as a Florida resident, suffered injury in Florida.[2]  In addition, here, as in *Elandia*, Plaintiffs have asserted an intentional tort claim, and such intentional tort of fraud in the inducement by Defendants was expressly aimed at Kennedy, a

---

[2] To the extent Defendants attempt to argue that they did not know they were sending communications into Florida when communicating with Kennedy, such argument is contradicted by Kennedy's Declaration and supporting documents.  In addition to Kennedy participating in numerous meetings of the CRUPE Board of Directors via phone, during which times Kennedy identified himself as being in Florida, other clear examples of Defendants' knowledge are (1) the November 6, 2012 Term Sheet, through which Eighteen Seventy loaned CRUPE $2,000,000, shows that Kennedy signed the document in Florida, and (2) the Bridge Loan Agreement, through which Kennedy personally loaned CRUPE $100,000, listed Kennedy's address in Florida.  Compl., ¶¶ 22b, 22d; Kennedy Decl. ¶¶ 5-6, 26 & Exs. 6-9.

Florida resident, "the effects of which were suffered by the resident in the forum state." *Elandia*, 690 F. Supp. 2d at 1338. Accordingly, Due Process is also satisfied here under the "effects test." *Id.* at 1338-39 (holding that Due Process was satisfied under the "effects test" where defendants committed intentional torts which injured the Florida-based plaintiff in Florida).

In determining whether Due Process has been satisfied, courts also evaluate whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice by considering factors such as the burden on the defendant, the forum state's interest in the dispute, and the plaintiff's interest in obtaining convenient and effective relief. *World-Wide Volkswagon Corp.v. Woodson*, 444 U.S. 286, 292 (1980). The Supreme Court has made clear that because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (internal quotation marks omitted).

Here, fair play and justice likewise dictate that this case be heard in Florida. Defendants make much of the idea that Switzerland is a preferable jurisdiction. In so doing, Defendants rely on *Eaton Corp. v. Maslyn Holding Co.*, 929 F. Supp. 792 (D.N.J. 1996), a non-binding case from New Jersey.[3] In *Eaton,* however, the court found that New Jersey had no interest in the case because none of the parties were New Jersey citizens. *Id.* at 799. Here, conversely, one of the Plaintiffs, Kennedy, is a longstanding citizen of Florida, who also happens to be the chief actor for the corporate Plaintiffs Eighteen Seventy and Marie Kennedy. Florida therefore has a strong interest in this matter. As this Court found in *Elandia*, a "Florida based Plaintiff, injured by intentional misconduct of Defendants expressly aimed at Florida, should not have to travel half a world away to obtain a remedy. Additionally, Florida has a very strong interest in affording its

---

[3] Defendants also contend that any judgment rendered in this action would be unenforceable in Switzerland pursuant to Article 149 of the Swiss Statute on Private International Law of 1989 (PILA). Mot. to Dismiss at 11. Article 149, however, refers to cases brought under Switzerland's Code of Obligations, and is unlikely to apply to this action. Conversely, Article 27 speaks more generally and dictates that recognition of a foreign decision will be denied, but only "if such decision is manifestly incompatible with Swiss public policy", or if a) the parties did not receive notice; b) a decision is rendered in violation of fundamental principles, such as lacking an opportunity to present a defense; or c) a dispute between the same parties and subject matter is pending or has already been decided in Switzerland, or decided in a third state. Article 27 of the Swiss Statute on Private International Law of 1989 (PILA). None of those concerns apply to this action and, further, this Court has broad equitable powers. A judgment from this Court could be enforced in Switzerland. Furthermore, defendants Fleury, Robertson and the Crupe Foundation are now residents of Australia, and defendant East Pacific Group is a Hong Kong entity.

residents a forum to obtain relief from intentional misconduct by nonresidents causing injury in Florida." *Elandia*, 690 F. Supp. 2d at 1339 (internal quotation marks omitted).

Nor should claims about alleged inconvenience to Defendants preclude jurisdiction. Because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King Corp.*, 471 U.S. at 474 (internal quotation marks omitted).  In short, Plaintiffs should not be denied their choice of forum, particularly where the one suggested by Defendants is not the most convenient (*see* Section D below).

### D. <u>Florida is the Appropriate Forum For This Case</u>

Defendants seeking to dismiss an action on *forum non conveniens* grounds must show (1) an adequate alternative forum is available, (2) the private and public factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.  *In re Banco Santander Sec. Optimal Litig.*, 732 F. Supp. 2d 1305, 1329-1330 (S.D. Fla. 2010).  Private factors include access to proof, availability to compel witness testimony, the cost of obtaining witnesses, and other "practical issues that make the trial easy, expeditious and inexpensive."  *Id.* at 1330.  "Public factors include the forums' respective interests in hearing the case, the administrative burdens placed on the district court, the difficulty of resolving choice of law problems and the need to apply foreign law, and the possibility of imposing jury duty 'upon the people of a community with no relation to the litigation.'"  *Id.* at 1330-31.  Ultimately, it is the "defendant [that] has the burden of persuasion as to all elements" of a motion to dismiss for *forum non conveniens*.  *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).  Defendants have failed to meet their burden.

The relevant factors weigh heavily in favor of the case remaining in Florida.[4]  In considering the private factors, which are "generally considered more important than the public

---

[4] Defendants also note in a footnote that comity dictates this Court should abstain from exercising jurisdiction because there are prior pending legal proceedings in Switzerland and Singapore.  Motion, at 15, n.4.  The Eleventh Circuit, however, has stated that the primary concerns in an international comity analysis are "(1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just." *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1306 (11th Cir. 2008) (citation omitted).  None of those concerns exist here where (1) the Singapore action is focused on the return of the stolen CRUPE IP which is not a claim made here; (2) claims for deception regarding the IP make up only a fraction of the claims in this action; (3) the Singapore

factors," as Defendants concede, "deference is given to the Plaintiff's choice of forum." Mot. to Dismiss at 15. As the Eleventh Circuit stated, "the plaintiffs' choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendant," and this deference to the plaintiff is strongest where, as here, they are citizens, residents, or corporations of the United States. *See Wilson v. Island Seas Inv., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) (internal quotation marks omitted). Here, Kennedy is a United States citizen, and Plaintiffs Eighteen Seventy and Marie Kennedy are entities organized in Delaware with principal places of business in the United States. The importance of deferring to Plaintiffs' choice of forum is strong, particularly where Kennedy is also a resident of the Southern District of Florida.

Whatever inconvenience Defendants may suffer does not dictate that instead Plaintiffs should be inconvenienced by having to litigate across the globe, particularly since the documents to prove the case are in this District, and Defendants themselves are scattered in different countries. East Pacific Group is domiciled in Hong Kong; CRUPE is in Singapore; Robertson is a dual citizen of Australia and Switzerland, and both Robertson and his wife Fleury have moved to Australia, where their children are enrolled in school; and insofar as Robertson and Fleury established the Crupe Foundation and are its trustees (along with Defendant Bihrer), the key witnesses for the Foundation – Robertson and Fleury – are not located in Switzerland. *See* Taennler Decl. ¶ 7; Compl. 5; Mot. to Dismiss at 2. Furthermore, the various documents needed to prove this case are in Florida, and Plaintiffs are willing to lessen any inconvenience to Defendants by agreeing to conduct depositions of Defendants in their places of residence. Kennedy Decl. ¶ 29.

The public factors likewise dictate that Florida is the proper forum for Plaintiff's claims. First, as discussed above, Kennedy has standing, and this Court has a strong interest in hearing a case in which one of the plaintiffs is a resident of this District, and acted on behalf of the other two plaintiffs in terms of the investments that are the subject of this case. Second, no burden is placed on the district court since this Court has a strong interest in protecting one of its citizens from the misconduct of nonresidents. *See Elandia*, 690 F. Supp. 2d at 1339 ("Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct by nonresidents causing injury in Florida"). Third, there is no choice of law issue or need for this

---

action has not progressed due to the burdensome nature of service through diplomatic channels and because the defendants have been avoiding service of process; and (4) the Switzerland arbitration is being terminated because East Pacific declined to pay the arbitration fees. Taennler Dec ¶¶ 5, 6.

Court to apply foreign law.  The law to be applied to Plaintiffs' securities fraud and common law fraud and negligence claims is U.S. law, generally, and Florida law, specifically.  Indeed, under Defendants' theory that the case should be resolved in Switzerland, that would result in a choice of law issue and the need for a Swiss Court to apply foreign law.  Finally, because Kennedy is a citizen of this District, there is no issue of imposing jury duty on a community with no relation to the litigation.

In short, Defendants have not met their burden of establishing *forum non conveniens*, and the private and public factors in this case dictate that the matter remain in this Court.

### E.  Bihrer and the Bihrer Firm's Claims are Not Subject to Arbitration

Contrary to Defendant Bihrer and Bihrer Firm's argument that the claims against them should be arbitrated based on an arbitration clause in investment and subscription agreements that Plaintiff Eighteen Seventy, Bihrer and the Bihrer Firm executed when investing in CRUPE, *see* Mot. to Dismiss, at 12-13, the claims in this litigation are not subject to the arbitration clause within the investment agreements.  Based upon the plain language of the arbitration clause, it applies only to "dispute(s) arising between the parties out of or in connection with this Agreement (including its interpretation, closing, execution, binding effect, amendment, breach, termination or enforcement)."  *Id.* at 13, & Ex. 19, ¶ 12.10 (emphasis added).  None of the claims in this case relate to an interpretation or violation of the Investment Agreement, and, therefore, there is no arbitral issue.  *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1215, 1219-20 (11th Cir. 2011) (recognizing an agreement's limiting language in ruling that arbitration agreement within employment agreement that applies to claims "relating to or in any way arising out of or connected with [the employment agreement]" did not require the arbitration of claims for false imprisonment, intentional infliction of emotional distress, spoliation of evidence, invasion of privacy, and fraudulent misrepresentation because such claims did not have a direct connection to the employment agreement).

The Investment Agreement also includes limiting language that confirms that the arbitration provision is not meant to cover claims by one investor against another.  The Investment Agreement states that it is between [CRUPE] and a list of thirteen [investors], including Bihrer and Eighteen Seventy.  Motion to Dismiss at Ex. 19, p.3.  The arbitration clause likewise states that it only governs disputes "arising between the Parties[.]"  *Id.* at Ex. 19, ¶ 12.10.  Use of the word "between" instead of "among" confirms that arbitration applies to

covered disputes between the parties to the Investment Agreement—namely, CRUPE, on the one hand, and the individual investor, on the other hand. *See Princess Cruise Lines*, 657 F.3d at 1217; *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 599 U.S. 662, 683 (2010) (ruling that an arbitral agreement's language creates a "system of self-government created by and confined to the parties"). Disputes among the investors are not covered by the terms of the arbitration provision.[5]

Defendants also argue that the subscription agreement between CRUPE and Eighteen Seventy, which includes the same arbitration provision in the Investment Agreement and references the Investment Agreement, confirms that the claims against Bihrer and the Bihrer Firm should be arbitrated. The opposite is true. The "between the Parties" language contemplates arbitration of arbitral issues only between Eighteen Seventy and CRUPE, not between Eighteen Seventy and *other investors* who are not parties to the subscription agreement.

### F.  Plaintiffs Have Properly Stated Claims for Relief for Securities Fraud

Defendants are not satisfied with the Complaint's allegation that Plaintiffs "purchased Crupe's securities in the Southern District of Florida," Compl. ¶ 3; Mot. to Dismiss at 17, and contend that dismissal of Plaintiffs' securities fraud claims is warranted because Plaintiffs did not attach any documents evidencing Plaintiff's purchases of CRUPE securities in the United States (for the 10b-5 claim) or Florida (for the Florida Blue Sky Claim). We are at the pleading stage, not the summary judgment stage. Although Rule 9(b)'s heightened pleading standard attaches for purposes of Plaintiffs' burden of pleading the elements of fraud, it does not require heightened pleading for the place in which a party purchased the securities at issue. *See Phillips v. Sci.-Atlanta, Inc.,* 374 F.3d 1015, 1016–17 (11th Cir. 2004) (describing how complaint must meet heightened pleading standard for alleging elements of fraudulent conduct, including the misleading statements and issues of scienter); *see also S.E.C. v. Nacchio*, 614 F. Supp. 2d 1164, 1174 (D. Colo. 2009) (although allegations of securities fraud must be pled with particularity, the rule is directed at the averments of the fraudulent statement itself and does not require

---

[5] Regardless, neither the Investment Agreement nor any other agreements apply to all of the investments Plaintiffs made with the Defendants. Moreover, the Investment Agreement and Subscription Agreement referenced by Defendants Bihrer and the Bihrer Firm were not signed by Plaintiff Marie Kennedy, and only relate to $5,000,000 of the $11,000,000 investments which are the subject of this action. *See Smith v. Steinkamp*, 318 F.3d 775, 777-78 (7th Cir. 2003) (ruling that since only the first of two pay day contracts contained an arbitration clause, which was written in a way that it applied in scope only to the first contract and prior contracts, the arbitration clause did not apply to second pay day loan).

particularized pleading as to other issues); *Xaphes v. Shearson, Hayden, Stone, Inc.*, 508 F. Supp. 882, 887 (S.D. Fla. 1981). And, as stated above, Rule 8(a)(2) "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Bernardele*, 608 F. Supp. at 1317. Plaintiffs have done so in their Complaint, and Defendants may not shift the burden to Plaintiffs to prove their claims on a motion to dismiss. Nevertheless, as set forth below, there is evidence, including one of the agreements submitted by Defendants in support of their Motion, that Plaintiffs' purchases of CRUPE securities took place in the United States, and at least one of which took place in Florida.

### 1. *Plaintiffs' 10b-5 Claims Survive*

A transaction involving securities is considered domestic and subject to Section 10(b) of the Exchange Act where "the purchase or sale is made in the United States." *Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247, 269-70 (2010). Following the standard set out in *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012), numerous courts, including this one, assess whether a securities transaction is considered domestic where irrevocable liability is incurred or title passes within the United States. *U.S. v. Gerogiou*, 777 F.3d 125 (3d Cir. 2015); *Quantum Capital, LLC v. Banco de Los Trabajadores*, No. 1:14-cv-23193, 2015 WL 12259226, at *13 (S.D. Fla. Dec. 23, 2015) ("The Second Circuit has subsumed the Eleventh Circuit's inquiry into its "irrevocable liability" test that asks where the parties became irrevocably bound to take and pay for a security").[6] Irrevocable liability is incurred at the time the parties to the transaction are committed to one another, which includes the "formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Absolute Activist*, 677 F.3d at 69-70; *Georgiou*, 777 F.3d at 136.

Defendants demand evidence that Plaintiffs' purchase of CRUPE securities was domestic, and, ironically, Defendants provide that very evidence in an exhibit submitted with their Motion to Dismiss. Specifically, by attaching CRUPE's preferential offer executed by Eighteen Seventy on July 2, 2014 <u>in the "USA"</u> , as reflected on the place/date above the document's signature line, Defendants provided evidence that at least one of Eighteen Seventy's purchases of CRUPE securities took place in the United States. *See* Mot. to Dismiss at Ex, 22e,

---

[6] Defendants cite to *Quail Cruises Ship Management Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307 (11th Cir. 2011), for the standard on how to assess where the purchase or sale of securities took place. *Quail*, however, was decided before *Absolute Activist* and this Court's adoption of the principles from that case.

p.3.  Irrevocable liability for the securities transactions occurred upon Eighteen Seventy's signing of the offer in the United States.  *See Absolute Activist*, 677 F.3d at 69-70; *Georgiou*, 777 F.3d at 136.

Likewise, there is evidence that Plaintiffs purchased CRUPE securities in Florida.  As described in the Complaint, Defendants first induced Eighteen Seventy to purchase CRUPE securities by sending an Information Memorandum, which Kennedy avers (and has demonstrated) he received while in Florida.  *See* Compl., ¶ 18, Kennedy Decl., ¶ 4 & Ex. 2.  In response to this Information Memorandum, Kennedy and Eighteen Seventy funded the purchase of over $3,000,000 in CRUPE shares from Florida on February 15, 2012.  Compl., ¶ 21, Kennedy Decl. ¶ 4 & Ex. 4.  Kennedy and Eighteen Seventy went on to invest more in CRUPE from Florida, including $300,000 in CRUPE shares in November 2014.  *See* Compl., ¶¶ 22e, 22g, 31; Kennedy Decl. ¶¶ 4, 8-10, & Exs. 3, 4, 13-15.  While in Florida on October 2 and 3, 2015, Kennedy also signed a Subscription and Subscriber Information and a Conversion Notice that converted debt of Crupe Framing held by Eighteen Seventy and Marie Kennedy into shares of CRUPE.  *See* Kennedy Decl., ¶ 25.  The funding of such investment and entering into these agreements signals the moment the parties committed to the transaction of buying or selling securities, and is, therefore, when irrevocable liability incurred.  *Absolute Activist*, 677 F.3d at 69-70; *Georgiou*, 777 F.3d at 136.

Stated simply, Plaintiffs purchased securities from CRUPE in the United States, and have stated a 10(b)(5) claim as a matter of law.

      2.   *Plaintiffs' Florida Blue Sky Law Claims Survive*

Like the Section 10b-5 claim, the essential question on the Motion to Dismiss Plaintiffs' Florida Blue Sky Law claims is whether Plaintiffs purchased CRUPE securities in Florida.   In Florida, it is unlawful to employ any device, scheme or artifice to defraud in connection with the offer, sale, or purchase of an investment or security.  Fla. Stat. § 517.301.  As Defendants correctly note, for Florida's Blue Sky Law to apply, the purchases of securities cannot be entirely made outside of Florida.  *Allen v. Oakbrook Sec. Corp.*, 763 So.2d 1099, 1101 (Fla. 4th DCA 1999).  As described above, Plaintiffs purchased CRUPE securities in Florida and have stated a claim under Florida's Blue Sky law as a matter of law.

G. **Michele Fleury Robertson Is Liable For Fraud and Negligent Misrepresentation**

Finally, Defendant Fleury knowingly participated with her husband and other Defendants in a conspiracy to defraud and breach their fiduciary duties to Plaintiffs, and is therefore liable for the fraud and negligent misrepresentation claims asserted against her.

Defendants contend that Fleury is off the hook because she lacked a direct relationship with Plaintiffs.  This does not absolve her of liability where she actively participated in the theft of CRUPE assets, schemed with her husband Robertson and others to effectuate it, and was the beneficiary of the fraud.  Indeed, when "a third party knowingly participates in the breach of a fiduciary duty, such third party becomes a joint tortfeasor with the fiduciary, and is liable as such."  *Bluesky Greenland Envtl. Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1365-66 (S.D. Fla. 2013).  To show such a breach, the facts must demonstrate (1) the existence of a fiduciary duty; (2) breach of the duty by the fiduciary; (3) that the defendant, who is not a fiduciary, knowingly participated in the breach, and (4) that damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary.  *Id.*  In *Bluesky*, plaintiff's fraud claim survived summary judgment because defendant knew of a fiduciary relationship and knowingly breached it by withholding important information.  *Id.* at 1366.  So too here, Fleury knew of the duties and responsibilities her husband and Defendants Bihrer and the Bihrer Firm owed to Plaintiffs, but instead of informing Plaintiffs about the misrepresentations and omissions in communications about CRUPE, she remained silent and profited from the scheme they concocted to defraud Plaintiffs.  *See* Compl., ¶¶ 23s, 25.

Fleury cannot escape her culpability for the fraudulent and negligent misrepresentations made to Plaintiffs, especially where she had an office with her husband at CRUPE, materials of the Defendant Crupe Foundation (of which she was Chair) were part of CRUPE's presentation materials and offering documents, and Fleury herself had a number of communications with Kennedy about CRUPE's IP, both via email and over the phone.  Kennedy Dec. ¶¶ 27, 28 & Exs. 36-44; Taennler Dec. ¶ 4.

H.  **Conclusion**

For the foregoing reasons, Plaintiffs request that this Court deny Defendants' Motion to Dismiss.


Dated:  June 16, 2017                    Respectfully submitted,

                                        HUGHES HUBBARD & REED LLP
                                        201 South Biscayne Boulevard, Suite 2500
                                        Miami, Florida 33131-4332
                                        Telephone:  (305) 358-1666
                                        Facsimile:  (305) 371-8759

                                         /s/Aviva L. Wernick
                                        Aviva L. Wernick
                                        Florida Bar No. 0697281
                                        aviva.wernick@hugheshubbard.com
                                        Jeffrey B. Goldberg
                                         Florida Bar No. 0118689
                                         jeffrey.goldberg@hugheshubbard.com

                                        Edward J.M. Little
                                        One Battery Park Plaza
                                        New York, New York 10004-1482
                                        Telephone:  212-837-6400
                                        Fax:  212-299-6400
                                        edward.little@hugheshubbard.com

                                        *Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that on this 16th day of June, 2017, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system.  I further certify that the foregoing is being served this day upon all counsel of record or pro se parties identified in the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Aviva L. Wernick            

Aviva L. Wernick

<u>SERVICE LIST</u>

Eduardo Palmer, Esq.
Fla. Bar No. 0562548
ep@palmerlaw.com
EDUARDO PALMER, P.A.
255 Aragon Avenue
2nd Floor
Coral Gables, Florida 33134
Telephone: (305) 476-1100
Facsimile: (305) 476-1300

*Attorneys for Defendants*