# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-25203-CIV-WILLIAMS/TORRES

EIGHTEEN SEVENTY LP, MARIE
KENNEDY FOUNDATION AND PAUL L.
KENNEDY,

                    Plaintiffs,

v.

STUART KINNEAR ROBERTSON,
MICHÈLE FLEURY ROBERTSON, EAST
PACIFIC GROUP LIMITED, CRUPE
FOUNDATION, ANDREAS R. BIHRER AND
BIHRER RECHTSANWÄLTE AG,

                    Defendants.

## DECLARATION OF PAUL L. KENNEDY

I, PAUL L. KENNEDY, declare as follows:

1. I submit this declaration in opposition to the Motion to Dismiss filed by Defendants. If called as a fact witness to testify, I am able to testify competently about the matters contained in this declaration.

2. I am a member, and since 2015 Chairman, of the board of directors of CRUPE Pte. Ltd. ("CRUPE").

3. My primary—indeed, sole—residence is, and has been since 2010 in Key Biscayne, Florida, where I have had a Homestead Exemption since 2010.

4. As described in Paragraph 18 of the Complaint in this matter, Stuart Robertson ("Robertson") and Andreas Bihrer ("Bihrer") first induced Eighteen Seventy LP ("Eighteen Seventy") to purchase CRUPE A-1 Preference shares by sending it an information memorandum ("Information Memorandum"). While I was in Florida on January 30, 2012, my brother Peter

78440336_2

and I, acting on behalf of Eighteen Seventy, initially informed Robertson that we intended to invest in shares of CRUPE. *See* January 30, 2012 email to Stuart Robertson, and calendar of Paul Kennedy for January 30 to February 5, 2012, attached collectively hereto as Exhibit 1. While I was in Florida on February 9, 2012, Andreas Bihrer ("Bihrer") sent me the Information Memorandum described in Paragraph 18 of the Complaint, and the Subscription Documents described in Paragraph 19 of the Complaint. *See* February 9, 2012 email from Bihrer, attached hereto as Exhibit 2, and calendar of Paul Kennedy for February 6 to 19, 2012, attached hereto as Exhibit 3. Finally, as described in Paragraph 21 of the Complaint, Eighteen Seventy funded this purchase of CRUPE shares on February 15, 2012, at which time I was also in Florida. *See* Exhibit 3, and List of Plaintiffs' Investments in CRUPE, attached hereto as Exhibit 4.

5. The term sheet used for the $2,000,000 loan from Eighteen Seventy to CRUPE ("Term Sheet"), described in Paragraph 22b of the Complaint, was delivered to me in Key Biscayne, Florida. *See* October 24, 2012 emails between Robertson and Paul Kennedy, and calendar of Paul Kennedy for October 22 to October 28, 2012, attached collectively hereto as Exhibit 5. As is clear on the face of that Term Sheet, I signed the document in Florida on November 6, 2012. *See* Term Sheet for $2,000,000 Loan, attached hereto as Exhibit 6.

6. On November 29, 2013, I entered into a Bridge Loan Agreement in which I agreed to loan CRUPE $100,000. *See* Bridge Loan Agreement, attached hereto as Exhibit 7. My address listed on this Agreement is in Key Biscayne, Florida, and I sent the funds to CRUPE on December 3, 2013, at which time I was also in Florida. *See* redacted credit card statement of Paul Kennedy, and the calendar of Paul Kennedy for December 2 to 8, 2013, attached collectively hereto as Exhibit 8; *see also* Payment Slip dated December 5, 2013, and an email

from CRUPE confirming receipt of the loan on December 10, 2013, attached collectively hereto as Exhibit 9.

7. Paragraph 22d of the Complaint states that the $200,000 loan was made by me and my family. Although I originally considered donating the loans to my children's trusts, I never did so, and I loaned $100,000 to CRUPE personally, while my wife loaned the other $100,000. *See* Exhibit 9, Payment Slip. I later converted this loan into 7,778 shares of CRUPE. *See* Conversion Notice, attached hereto as Exhibit 10. The Conversion Notice listed my address in Key Biscayne, Florida, and the shares were and remain in my name. *See id.* Moreover, Robertson and the other defendants were aware that I personally owned shares. For example, in a March 3, 2014 email to another investor, Robertson stated that "Paul Kennedy and family also converted" a loan into shares. *See* March 2014 email chain, attached hereto as Exhibit 11. Robertson did not state or imply, as the defendants now do in their Motion to Dismiss, that it was only my family, and not me, that owned the shares. In addition, in a May 11, 2014 email to Bihrer, I confirmed that the $200,000 investment was made by my wife "and by me, each 50%, but through separate and not joint accounts." *See* May 11, 2014 email to Bihrer, attached hereto as Exhibit 12.

8. On May 23, 2014, I was in Florida when Eighteen Seventy funded its investment of $1,000,000 in CRUPE shares, as described in Paragraph 22e of the Complaint. *See* redacted credit card statement of Paul Kennedy for May 2014, attached hereto as Exhibit 13; *see also* Exhibit 4, List of Plaintiffs' Investments in CRUPE.

9. On November 10, 2014, I was in Florida when Eighteen Seventy invested $300,000 in CRUPE shares, as described in Paragraphs 22g and 31 of the Complaint. *See*

redacted credit card statement of Paul Kennedy for November 2014, attached hereto as Exhibit 14; *see also* Exhibit 4, List of Plaintiffs' Investments in CRUPE.

10. On April 1, 2016, I was in Florida when Eighteen Seventy loaned $70,000 to CRUPE, as described in Paragraph 22i of the Complaint. *See* April 1, 2016 receipt from CVS Pharmacy, and calendar of Paul Kennedy for March 28, 2016 to April 3, 2016, attached collectively hereto as Exhibit 15; *see also* Exhibit 4, List of Plaintiffs' Investments in CRUPE.

11. On September 14, 2012, I was in Florida when Robertson distributed a report that deceptively suggested a large order was secured or imminent, as described more fully in Paragraph 23h of the Complaint. *See* September 14, 2012 email from Robertson, and calendar of Paul Kennedy for September 10 to 16, 2012, attached collectively hereto as Exhibit 16.

12. On April 4, 2013, I was in Florida when I received an email from Robertson distributing an updated Information Memorandum, as described more fully in Paragraph 23i of the Complaint. *See* April 4, 2013 email from Robertson, and calendar of Paul Kennedy for April 1 to 7, 2013, attached collectively hereto as Exhibit 17.

13. On November 15, 2013, I was in Florida when Robertson prepared and distributed a forecast for sales in 2014, and gave a presentation in which he boasted about technology and growth for CRUPE, as described in Paragraphs 23o, 23p and 23q of the Complaint. *See* November 2013 email from Robertson, and calendar of Paul Kennedy for November 11 to 16, 2013, attached collectively hereto as Exhibit 18.

14. On December 15, 2013, I was in Florida, the date of a letter Robertson wrote to CRUPE shareholders making misleading claims about the company, as described more fully in Paragraph 23r of the Complaint. *See* December 15, 2013 letter, and calendar of Paul Kennedy for December 9 to 15, 2013, attached collectively hereto as Exhibit 19.

15. On December 24, 2013, I was also in Florida when Robertson emailed CRUPE investors, including myself, with information about investing further in the company, as described more fully in Paragraph 23s of the Complaint. *See* December 24, 2013 email from Robertson, and calendar of Paul Kennedy for December 23 to 29, 2013, attached collectively hereto as Exhibit 20.

16. On February 3, 2014, I was in Florida when Robertson sent the email and report described in Paragraph 23u of the Complaint. *See* February 3, 2014 email from Robertson, and redacted credit card statement of Paul Kennedy for February 3 and 4, 2014, attached collectively hereto as Exhibit 21.

17. On March 10, 2014, I was in Florida when Robertson emailed Eighteen Seventy with a false and exaggerated claim about its order book, as described in Paragraph 23v of the Complaint. *See* March 10, 2014 email from Robertson, and redacted credit card statement of Paul Kennedy for March 10, 2014, attached collectively hereto as Exhibit 22.

18. In early March 2014, I was also in Florida when Robertson distributed to Eighteen Seventy and other investors an order book that falsely reflected committed orders, as described more fully in Paragraphs 23w of the Complaint. *See* March 3, 2014 email from Robertson, and redacted credit card statement for Paul Kennedy in March 2014, attached collectively hereto as Exhibit 23.

19. I was also in Florida on March 31, 2014, when Robertson distributed a "First Quarter Report" to CRUPE investors, as described in Paragraph 23y of the Complaint. *See* March 31, 2014 email from Robertson, and redacted credit card statement for Paul Kennedy for March 31, 2014 purchases, attached collectively hereto as Exhibit 24.

20. On April 10, 2014, I was in Florida when Robertson emailed me more false projections for CRUPE, as described in Paragraph 23bb of the Complaint. *See* April 10, 2014 email from Robertson, and redacted credit card statement for Paul Kennedy for April 2014, attached collectively hereto as Exhibit 25.

21. On May 15, 2014, I was in Florida when Robertson emailed me and other investors, describing an improved outlook for CRUPE, as described in Paragraphs 23dd and 23ee of the Complaint. *See* May 15, 2014 Emails with Robertson, and redacted credit card statement of Paul Kennedy for May 15-16, 2014, attached collectively hereto as Exhibit 26.

22. In May 2014, as described in Paragraph 23ff of the Complaint, Robertson distributed a forecast for 2014. On May 13, 2014, Robertson emailed me and others with updates about CRUPE. At the time of this email I was out of the country, however, I was in Florida on May 23, 2014, the date Robertson sent a letter to CRUPE shareholders, and the day Eighteen Seventy purchased $1,000,000 of CRUPE shares. I was also in Florida on May 28, 2014 when Robertson emailed me and other CRUPE shareholders with further updates about CRUPE. *See* May 13, 2014 email from Robertson, May 23, 2014 letter from Robertson, May 28, 2014 email from Robertson, and redacted credit card statement for Paul Kennedy for May 23 and 28, 2014, attached collectively hereto as Exhibit 27; *see also* Exhibit 4, List of Plaintiffs' Investments in CRUPE.

23. On October 13, 2014, I was in Florida when Robertson falsely reported that CRUPE had signed new orders and that large companies were switching to CRUPE for future projects, as described in Paragraph 23ll of the Complaint. *See* October 13, 2014 emails from Robertson, and redacted credit card statement for Paul Kennedy on October 13 and 14, 2014, attached collectively hereto as Exhibit 28.

24. As described in Paragraph 27 of the Complaint, Robertson made a number of false representations and omissions of material facts, beginning on May 9, 2013, at which time Robertson emailed me while I was in Florida, with updates about CRUPE. *See* May 9, 2013 email from Robertson, and calendar of Paul Kennedy for May 6 to 12, 2013, attached collectively hereto as Exhibit 29. Robertson and the defendants' false representations continued for several months, through September 30, 2013, at which time there was an additional investment of $500,000 in CRUPE by Eighteen Seventy. *See* Exhibit 4, List of Plaintiffs' Investments in CRUPE.

25. On October 2 and 3, 2015, I was also in Florida when I signed documents to convert debt of Crupe Framing held by Eighteen Seventy and Marie Kennedy Foundation into shares of CRUPE. *See* Subscription and Subscriber Information, Conversion Notices, and redacted credit card statement of Paul Kennedy for October 3 to 5, 2015, attached collectively hereto as Exhibit 30.

26. In addition to the fact that I was physically present in Florida during a large proportion of the relevant events in this case, Robertson and the other defendants were aware that I lived in Florida. It was common knowledge. During my first meeting with Robertson, which occurred in Bangkok, in the course of very typical "getting to know you" discourse, I informed him that I lived in Miami. I did the same in an early meeting with Bihrer, as we discussed his interest in the polo scene in Wellington, Florida. I visited Andreas Bruegger, Chief of Operations of CRUPE, when he spent holidays on Fisher Island, and I offered Richard Jayson, a director and CFO of CRUPE, hospitality in Miami when he took his trips to Orlando with his kids. The head of the Brazilian operations visited my home in Key Biscayne, and in about 2013 Neil Sunderland, the then Chairman of CRUPE, noted surprise to run into me on a flight to San

Francisco, asking why I was not headed back to Miami. During meetings of the CRUPE Board of Directors, I also often mentioned that I was in Miami, particularly during the winter months when I frequently gave and received quips about the weather. My location was also obvious via many of the documents I received and when funding investments in CRUPE. Indeed, my name and address in Florida were included in a number of relevant documents, including the Term Sheet, Bridge Loan Agreement, and Subscription and Conversion documents, described respectively in paragraphs 5, 6 and 25 above. In addition:

   a. On May 30, 2012, I emailed Adam Hill, stating that I had just returned to Miami, and later that day sent that email as part of an email chain to both Mr. Hill and Robertson. *See* May 30, 2012 email chain, attached hereto as Exhibit 31.

   b. On October 11, 2012, I emailed Robertson and stated that I had been in Miami. *See* October 11, 2012 email, attached hereto as Exhibit 32.

   c. In January 2014, I emailed my flight reservations to Robertson that demonstrated I was traveling from Miami. *See* January 7, 2014 email, attached hereto as Exhibit 33.

   d. On December 23, 2014, Robertson emailed me and ultimately wished me happy holidays, ending with "Enjoy Miami . . ." *See* December 23, 2014 email, attached hereto as Exhibit 34.

   e. On February 15 and 16, 2015, I emailed Robertson to let him know I would be traveling from Miami. *See* February 2015 emails, attached hereto as Ex 35.

27. The CRUPE Foundation was likewise pulled into the web of inducements and misrepresentations made in conjunction with investments into CRUPE. For example, in February 2014, CRUPE provided an investment presentation in which it described how CRUPE and the CRUPE Foundation were working "to make high quality homes more attainable", and described the CRUPE Foundation's three main programs. *See* February 2014 Presentation, at pp. 9-10, attached hereto as Exhibit 36. In addition, in a Rights Offering–an offering of securities– from April 15, 2014, CRUPE attached information about the CRUPE Foundation in Chile. *See* April 15, 2014 letter, attached hereto as Exhibit 37.

28. Contrary to the Defendants' claims that Michele Fleury Robertson ("Fleury") sent me only "one" email, in fact, Fleury engaged in various communications with me concerning the IP of CRUPE and other issues highly relevant to investment. For example:

    a. On April 25, 2015, I exchanged emails with Fleury regarding the dispute over the license for CRUPE. *See* April 24 and 25, 2015 emails, attached hereto as Exhibit 38.

    b. On May 6, 2015, I exchanged emails with Robertson, Bihrer and Fleury concerning a shareholder letter and IP of CRUPE. Fleury made proposals, as I state in my email to Robertson at 15:33, and Robertson notes in his 9:53 A.M. email that Fleury proposed changes to an existing license agreement. *See* May 6, 2015 emails (6:39 P.M.), attached hereto as Exhibit 39.

    c. On May 7, 2015, Fleury was part of email chains discussing a licensing agreement between CRUPE and the CRUPE Foundation. *See* May 7, 2015 emails, attached collectively hereto as Exhibit 40.

    d.  On May 8, 2015, Fleury was part of an email chain that discussed the IP of CRUPE. *See* May 8, 2015 email, attached hereto as Exhibit 41.

    e.  On May 12, 2015, Fluery emailed me a letter with a proposal about CRUPE's IP. *See* May 12, 2015 email, attached hereto as Exhibit 42.

    f.  On May 12 and 13, 2015, Fleury was part of an email chain in which Robertson described CRUPE's need for money. *See* May 13, 2015 email, attached hereto as Exhibit 43.

    g.  On May 21, 2014, Fleury was copied on an email from Robertson concerning the use of CRUPE technology in a charitable project in Chile. *See* May 21, 2014 email, attached hereto as Exhibit 44.

    h.  I also recall two telephone calls with Fleury, likely in May 2015, concerning issues with CRUPE's IP that are the subject of the emails I describe above.

29.    The various documents needed to prove this case are in Florida.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON: JUNE 9, 2017

_____
PAUL L. KENNEDY