UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-25203-CIV-WILLIAMS/TURNOFF

EIGHTEEN SEVENTY LP,
MARIE KENNEDY FOUNDATION,
AND PAUL L. KENNEDY,

    Plaintiffs,

v.

STUART KINNEAR ROBERTSON,
MICHÈLE FLEURY ROBERTSON,
EAST PACIFIC GROUP LIMITED,
CRUPE FOUNDATION, ANDREAS R. BIHRER,
AND BIHRER RECHTSANWÄLTE AG,

    Defendants.
_____/

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants moved to dismiss or compel arbitration on six grounds, including lack of personal jurisdiction (the Motion). In response (the Response), Plaintiffs essentially concede that their jurisdictional allegations are inadequate and improperly seek to assert a new jurisdictional basis, § 48.193(1)(a)(2) (committing a tort in Florida). This new theory is based on Kennedy's self-serving assertions that 'I was in Florida,' and (we are not making this up) his handwritten calendar entries that say FLA or MIA (made who knows when) or credit card purchases (no indication he made the purchases). What is absent from almost all of said statements is evidence that Defendants knew he was in Florida at the time. Also convenient, while Kennedy didn't originally personally invest, he now claims he later became a Crupe shareholder. As explained below, some of what Plaintiffs say is just, well, wrong. And none of what they say is enough to show that the Motion should not be granted.

**1) <u>This Court Does Not Have Personal Jurisdiction Over The Defendants</u>**.

    **A.**    *Analysis: The Florida Long-Arm Statute Fla. Stat. § 48.193*.

The crux of Plaintiffs' personal jurisdictional allegations is that Defendants engaged in conducting business and solicitation activities in Florida that injured Plaintiffs in Florida. [Cmpl., DE 1 ¶ 12]. Based on Plaintiffs' allegations, the only specific jurisdictional bases available were

§ 48.193(1)(a)(1) and (6). [Mot., DE 18 at 5-8]. Defendants explained there could be no specific jurisdiction under either subsection. [*Id.*]. Plaintiffs do not dispute that. [Resp., DE 23 at 7-12]. Defendants also explained why there was no general jurisdiction under § 48.193(2). [Mot., DE 18 at 9]. Plaintiffs do not argue that there is general jurisdiction. [Resp., DE 23 at 7-12].

### i. Plaintiffs' New Jurisdictional Basis, § 48.193(1)(a)(2), Also Fails.[1]

In the Response, Plaintiffs asserted a new basis for personal jurisdiction: Defendants committed torts in Florida. [Resp., DE 23 at 7-9]. Plaintiffs' new jurisdictional basis also fails.

#### a. *Plaintiffs Cannot Now Assert a New Jurisdictional Basis*.

Nowhere in the Complaint did Plaintiffs assert that Defendants committed any torts – whether in Florida or outside of Florida that caused injury in Florida. [Cmpl., DE 1 at ¶ 12]. The Response is the first time that they allege specific jurisdiction over Defendants because they committed torts. Plaintiffs, however, cannot amend their complaint through statements contained in their Response. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101 (7th Cir.1984) (a party could not amend a complaint in a brief in opposition to a motion to dismiss). Accordingly, Plaintiffs newly asserted jurisdictional basis is improper and should not be considered.

#### b. *Even If The Court Considers Plaintiffs' Newly Asserted Jurisdictional Basis, It Also Fails*.

Plaintiffs' new jurisdictional basis fails on the merits, and, as a result, the Court should not allow Plaintiffs to amend because any amendment would be futile.

"Florida's long-arm statute is to be strictly construed." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996). "Specific jurisdiction may be found under" § 48.193(1)(a)(2) if Defendants "commit[ted] a tortious act in Florida." *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1324 (S.D. Fla. 2009). In certain instances, Defendants do not have to be physically present in Florida to commit the alleged tort. *Id.* at 1324-25. Plaintiffs make much of the fact that Defendants can commit a tortious act "through telephonic, electronic, or written communications into Florida" so long as Plaintiffs' cause of action arises from these communications. *Wendt v. Horowitz,* 822 So. 2d 1252, 1260 (Fla. 2002). Plaintiffs, however,

---

[1] Given that Plaintiffs improperly assert a new jurisdictional basis, Defendants request an evidentiary hearing if the Court is inclined to view Plaintiffs' new theory as supporting a finding of jurisdiction. *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997). Defendants respectfully request that the Court provide them with 30-days notice of such a hearing because Defendants are located across the globe.

notably omit two unfavorable facets of Florida law. First, "simply communicating or transferring documents to or within Florida with respect to transactions in another state [does not] impose[] jurisdiction, *per se*." *Harris v. Shuttleworth & Ingersoll, P.C.*, 831 So. 2d 706, 708 (Fla. 4th DCA 2002). Second, the place of the plaintiff's alleged injury must be Florida. *Bernardele*, 608 F. Supp. 2d at 1325 (internal citations omitted).

First, even when it is uncontested that a non-resident defendant was purposefully directing his communications to a Florida resident present in Florida, these communications are not sufficient to create personal jurisdiction. *Harris,* 831 So. 2d at 708; *Korman v. Kent,* 821 So. 2d 408, 408 (Fla. 4th DCA 2002). Here, unlike in *Harris,* none of the individual Defendants knew where Kennedy was when they communicated with him. [Michèle Robertson Dec., DE 18-2 ¶ 17; Bihrer Dec., DE 18-3, ¶ 21; Robertson Dec., DE 18-1 ¶ 22]. And how could they? Kennedy's own calendar shows that it any given week he could be in Connecticut, Florida, Switzerland, or elsewhere. [Kennedy Dec., DEs 23-17 at 4, 23-19 at 4, 23-20 at 4]. Nowhere in his declaration does Kennedy say he announced his location on every alleged call or that his email disclosed where he was. Rather, he claims that Defendants knew he was based in Florida because other Crupe personnel may have known of that fact.[2] [Kennedy Dec., DE 23-1 at 7]. Not true. Attached as Exhibit A is the Declaration of Crupe's former Chief Financing Officer Richard Jayson. He confirms that along with the individual Defendants, he did not know where Kennedy was at the time he communicated with him. Ex. A, Jayson Dec., ¶¶ 12-13. Thus, according to Kennedy's theory of the law, jurisdiction for the alleged torts would depend on wherever Kennedy happened to be – regardless of whether Defendants knew where he was at the time of the alleged torts. There is no legal basis for that far-reaching theory.[3]

---

[2]   Plaintiffs also claim that Defendants knew Kennedy was in Florida because of the (1) November 6, 2012 Term Sheet, which allegedly shows that Kennedy signed the document in Florida, and (2) the Bridge Loan Agreement, which lists Kennedy's address. The Term Sheet is mostly illegible, including the stated place of signature. [DE 23-7 at 5]. Thus, the Term Sheet didn't put Defendants on notice that Kennedy was in Florida. The Bridge Loan was signed on behalf of three trusts, none of whom are parties here. [DE 23-8 at 1]. Accordingly, the Bridge Loan is irrelevant for jurisdictional purposes.

[3]   Plaintiffs conflate Kennedy's activities with those of Plaintiffs Eighteen Seventy and the Marie Kennedy Foundation. However, Eighteen Seventy and the Marie Kennedy Foundation are separate legal entities and Defendants' purported jurisdictional contacts with Kennedy cannot be

Moreover, the gist of Plaintiffs' complaint is that they invested based on the Defendants' alleged misrepresentations regarding Crupe's financial state and the Crupe IP. But, as explained below, Plaintiffs' investments in Crupe were not conducted in Florida or the United States. *Infra* 6-8. As several courts have noted, merely communicating or transferring documents to or within Florida in connection with out-of-state transactions does not create jurisdiction under § 48.193(1)(a)(2). *Harris*, 831 So. 2d at 708 (no jurisdiction over Iowa firm relating to Florida resident's trust proceeds, even though firm sent documents to Florida); *Korman,* 821 So. 2d 408.

Finally, Plaintiffs' alleged injury could not have occurred in Florida because Plaintiffs Eighteen Seventy and the Marie Kennedy Foundation are not Florida residents. *Bernardele*, 608 F. Supp. 2d at 1325 (finding no personal jurisdiction over non-resident defendants). *Tommy Bahama Group, Inc. v. Eagle*, No. 3:09-CV-641-J-32JRK, 2010 WL 3340538, at *7 (M.D. Fla. Aug. 23, 2010). And Plaintiff Kennedy, the alleged Florida resident, did not personally invest in Crupe and, therefore, suffered no injury. *Infra* 8-9.

### B.  Analysis: The Due Process Clause.

If the Court were to find specific jurisdiction over Defendants, then it must conduct the required Due Process Clause two-step analysis: (1) whether Defendants have the "minimum contacts" with Florida necessary for them to have "reasonably anticipate[d] being haled into court" in Florida, *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); and (2) whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).

#### i.  Defendants Do Not Have Minimum Contacts.

Minimum contacts involve evaluating whether: (1) Defendants' contacts are related to Plaintiffs' causes of action or give rise to them; (2) Defendants purposefully availed themselves of conducting activities in Florida; and (3) Defendants' contacts within Florida are such that they should reasonably anticipate being sued in Florida. *Sculptchair, Inc.*, 94 F.3d at 631.

First, Defendants' contacts do not relate to Plaintiffs' claims or give rise to them. Defendants could not have directed their communications to Florida because they did not know where Kennedy was when they communicated with him and the contemplated future consequence of the parties' transaction was to occur in Switzerland, not Florida, i.e., the Crupe

---

imputed to them. They must establish their own independent jurisdictional connection with Defendants, which they have not.

4

investment . *Supra* 3. *Infra* 6-8. *Walack v. Worldwide Mach. Sales, Inc.*, 278 F. Supp. 2d 1358, 1368-70 (M.D. Fla. 2003).

Second, to purposefully avail themselves under the *Calder v. Jones*, 465 U.S. 783 (1984) effects test, Defendants' alleged torts must: (1) be intentional; (2) be aimed at Florida; and (3) cause harm that Defendants should have anticipated would be caused in Florida. *Licciardello v. Lovelady*, 544 F.3d 1280, 1285-88 (11th Cir. 2008). None of those factors are met here, as the individual Defendants did not know where Kennedy was when they communicated with him. [Michèle Robertson Dec., DE 18-2 ¶ 17; Bihrer Dec., DE 18-3, ¶ 21; Robertson Dec., DE 18-1 ¶ 22; *see also* Ex. A, Jayson Dec., ¶¶ 12-13]. As Defendants did not know that Kennedy was in Florida at the time of the alleged torts, then they could not have purposefully availed themselves of conducting activities in Florida. *Walack*, 278 F. Supp. 2d at 1369-70.

Finally, given that Plaintiffs' Crupe investments did not happen in Florida, that Defendants did no business in Florida, and that the individual Defendants did not know where Kennedy was when they communicated with him, Defendants could not reasonably anticipate being haled into court in Florida.

### ii. Fair Play and Substantial Justice.

In determining whether the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice, courts consider several factors, including the burden on a defendant, the forum state's interest in adjudicating the dispute, a plaintiff's interest in obtaining convenient and effective relief, interstate and international judicial systems' interest in obtaining the most efficient resolution of controversies, and procedural and substantive interests of other nations. *Burger King,* 471 U.S. at 477. Here, Florida's interest in adjudicating the dispute is remote because all Defendants are non-residents, none of the real Plaintiffs in interest are Florida residents (Kennedy is not a party in interest because he did not personally invest). *Bernardele*, 608 F. Supp. 2d at 1326.

**2) Eighteen Seventy Must Arbitrate Its Claims Against Bihrer (and the Bihrer Law Firm)**.

Plaintiff, Eighteen Seventy, argues that its claims against Bihrer and (his alleged alter ego) the Bihrer Law Firm should not be referred to arbitration because (1) its claims are not encompassed by the arbitral clauses in the Investment or Subscription Agreements, and (2) the arbitration provisions do not cover disputes between co-investors in Crupe. Both arguments fail.

5

First, similarly worded arbitral clauses have been found to encompass claims of common law fraud, fraud in the inducement, negligent misrepresentation, and statutory claims. *See Chidambaram v. Sekkappan*, No. 1:13-CV-2958-RWS, 2014 WL 2118815, at *2, *6-7 (N.D. Ga. May 20, 2014) (compelling arbitration of plaintiffs' claims of common law fraud, fraud in the inducement, and Georgia's RICO Act where clause in investment agreement stated that "[a]ll disputes arising out of this agreement or in connection therewith shall be settled by arbitration"); *Pet Quarters, Inc. v. Badian*, No. 4:04 CV 697(RSW), 2006 WL 1307669, at *1, *5 (E.D. Ark. May 9, 2006) (finding that clause that stated "[a]ny dispute under this [investment] Agreement shall be submitted to arbitration[,]" required arbitration of plaintiff's statutory and tort claims).

Second, the language of the Investment Agreement and Subscription Agreement torpedo Eighteen Seventy's argument. The Investment Agreement has several defined terms. "Company" refers to Crupe. [Inv. Agr., DE 18-5 at 4]. "Investor" refers to any of the investors in Crupe, which would include Eighteen Seventy, Bihrer (and by Plaintiffs theory the Bihrer Law Firm). [*Id.*]. The term "'Party' means any party to this" Investment Agreement, and the term "'Parties' means all of the Parties to this" Investment Agreement. [Inv. Agr., DE 18-5 ¶ 1.2]. As Plaintiffs concede, the arbitral clauses state that "[a]ny dispute(s) arising between the Parties" shall be submitted to arbitration in Switzerland. [Inv. Agr., DE 18-5 ¶¶ 12.9-12.10; Subscription Agr., DE 18-7 ¶ 10]. The arbitral clauses plainly contradict Plaintiffs' argument that only disputes between Crupe and Investors should be arbitrated. If that were the case, then the arbitral clauses would have stated 'any dispute(s) arising between the Company (Crupe) and Investors shall be submitted to arbitration.' But they do not say that. As such, Eighteen Seventy must arbitrate its claims against Bihrer and the Bihrer Law Firm in Switzerland.

**3) Switzerland is The Appropriate Forum; Florida is Not**.

A *forum non conveniens* dismissal requires Defendants "demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). Plaintiffs do not dispute that prongs (1) and (3) have been met. [Resp., DE 23 at 12-14]. Plaintiffs dispute whether Defendants have met prong (2).

The public factors heavily favor Switzerland. First, Switzerland has more of an interest in resolving this case than Florida. As explained later, Kennedy is the only alleged Florida resident

6

in this case and he has no standing. Every other party (including Eighteen Seventy and the Marie Kennedy Foundation) has no Florida connection. Florida has no interest or tie to this case. Switzerland, however, has considerable interest in adjudicating the rights and liabilities of its domestic corporations and citizens (Robertson, Bihrer, the Bihrer Law Firm, and Michèle Robertson), and alleged fraud relating to Crupe's securities, a company headquartered in Switzerland. *Tonkon v. Denny's, Inc., Civ. A*. No. 86-1186, 1987 WL 8837, at *3 (E.D. Pa. Mar. 31, 1987). Second, given that there is no Florida connection, this case would impose an administrative burden on an already burdened District. Finally, contrary to Plaintiffs' assertions, there are choice of law issues here. [Resp., DE 23 at 13-14]. The relevant securities were purchased in Switzerland (or potentially Singapore). Almost all of the relevant meetings happened in Switzerland. And most of the relevant agreements provide that Swiss law applies. [*See, e.g.,* Inv. Agr., DE 18-5 ¶¶ 12.9-12.10; Subscription Agr., DE 18-7 ¶ 10].

Plaintiffs contend that the private factors favor Florida because the relevant documents are in this District and the relevant witnesses are not in Switzerland. [Resp., DE 23 at 13]. Despite the documents allegedly being in this District, Plaintiffs did not attach a single agreement or document to their complaint. It was Defendants who provided *some* of the relevant documents, none of which were in this District. And to support their Response, Plaintiffs attach declarations from two *foreign* witnesses, one in Switzerland and another in Singapore. [Resp., DE's 23-46 and 23-47]. Moreover, Robertson and Michèle Robertson have not relocated their residence to Australia and remain Swiss residents. *See* Exhibit B, Additional Declaration from Stuart Robertson. Thus, most of the documents are not in this District, all but one of the Defendants are Swiss, and as Crupe is headquartered in Switzerland, the costs of obtaining these documents and witnesses for testimony will be far less expensive in Switzerland.

**4) Plaintiffs' Securities Claims (Counts 3 and 4) Must be Dismissed**.

A cause of action for securities fraud under § 10(b) may only be brought where (1) the security involved was listed on a U.S. exchange, or (2) the purchase or sale is made in the United States. [Mot., DE 18 at 16 (citing *Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247, 260, 269-70 (2010))]. Only the second prong is at issue.

This Circuit holds that to determine where a purchase or sale of securities took place, courts must look to see where the transfer of title to the securities took place. *Quail Cruises Ship Mgmt Ltd. v. Agencia de Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 (11th Cir. 2011).

Other courts have adopted more expansive tests. Specifically, the Second Circuit adopted this Circuit's title test *and* added its own irrevocable liability test. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012) ("a plaintiff must allege facts suggesting that irrevocable liability was incurred or title was transferred within the United States.").

Plaintiffs argue that *Absolute Activist* is binding because it was decided one-year after *Quail Cruises* and because another Judge in this District adopted it. [Resp., DE 23, at 16 n. 6]. Wrong. The only courts this Court must follow "are this Circuit and the Supreme Court of the United States." *Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.*, 240 F.3d 956, 965 n. 14 (11th Cir. 2001). *See also Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011). And there appears to be no Eleventh Circuit decision adopting the irrevocable liability test announced in *Absolute Activist*. Accordingly, this Court must apply *Quail Cruises*.

Applying *Quail Cruises* results in the dismissal of Plaintiffs' securities claims because title to Crupe's securities did not transfer in the United States or Florida. Plaintiffs do not argue that title to Crupe's securities was transferred in the United States. [Resp., DE 23 at 16-17].

Even if the Court were to apply *Absolute Activist*, Plaintiffs' claims must still be dismissed. Plaintiffs focus on the fact that they are U.S. persons or entities, that Kennedy was purportedly in Florida when he received information regarding Crupe, and that Kennedy allegedly signed various documents while in Florida. [Resp., DE 23 at 17]. This, they argue, means that irrevocable liability was incurred in the United States. [*Id.*]. However, none of these circumstances suffice. First, "a party's residency or citizenship is irrelevant to" determining the location of a given transaction. *Absolute Activist,* 677 F. 3d at 70. Second, even if Crupe's securities were marketed in the United States (which they weren't) and Plaintiffs were harmed by Defendants' actions, this "do[es] not satisfy the transactional test announced in *Morrison.*" *Id.* at 70. Finally, the fact that Kennedy allegedly signed the various agreements in Florida is not sufficient to satisfy *Morrison. Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 207, 214–16 (2d Cir. 2014) (applying *Absolute Activist* and dismissing plaintiffs' securities claims where plaintiffs alleged that swap agreements were executed in New York).

As to Plaintiffs' Fla. Stat. § 517.301 (Florida's Blue Sky Law) claim, that must also be dismissed because the sale and purchase of Crupe's securities did not occur in Florida. *Supra* 7-8. [Mot., DE 18 at 16-17 (citations omitted)].

5) **Kennedy Is Not A Crupe Shareholder And, Therefore, Has No Standing**.

Contrary to his assertions, the Complaint is not clear that Kennedy personally invested in Crupe or purchased Crupe shares. The sole allegation in the Complaint is that "[i]n December 2013, Kennedy and family loaned $200,000 to CRUPE." [Cmpl., DE 1 at ¶ 22d]. Given that Plaintiffs conflate Kennedy, Eighteen Seventy, and the Marie Kennedy Foundation as all being one and the same, it hardly follows that this allegation means Kennedy personally invested in Crupe. Nevertheless, the Court is not bound by the allegation because (1) Defendants have asserted a factual attack on Kennedy's standing, *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 212 F. Supp. 3d 1250, 1255-56 (S.D. Fla. 2016), and (2) the documents attached to the Motion relating to Kennedy's investment are central to his claim and referred to by Kennedy, *Brown v. One Beacon Ins. Co. Inc.,* 317 F. App'x 915, 917 (11th Cir. 2009).

Here, Kennedy initially stated that only his wife and children made the $200,000 loan. [Mot., at Ex. 22d, DE 18-10]. Kennedy now states that while he contemplated making $100,000 of the $200,000 loan in the names of his children, he did not do so and made it in his own name. [Kennedy Dec., DE 23-1 ¶¶ 6-7]. Not true. The loan document that he signed regarding this loan states that Kennedy was "acting on behalf of three family trusts, the Paul L.M. Kennedy 2012 Family Trust, Nichols R. O'K. Kennedy 2012 Family Trust, and the Hilary C. Kennedy 2012 Family Trust." [Bridge Loan Agr., DE 23-8 at p. 2]. Kennedy claims that he converted this $100,000 loan into Crupe shares in his name. [Kennedy Dec., DE 23-1 ¶¶ 6-7]. Interestingly enough, he *tried* to do that by crossing out (by hand) the names of the trusts in the conversion notice. [Conversion Notice, DE 23-11 at 2].[4] In support, he attaches the declaration of Simon Peat who swears that Kennedy is personally a Crupe shareholder.

Crupe is a Singaporean company and, as such, must make regulatory filings with Singapore's Accounting and Corporate Regulatory Authority (ACRA). Among those regulatory filings is that Crupe must disclose all its shareholders. Attached is the official ACRA report for Crupe as Exhibit C, as of June 22, 2017. While Kennedy is identified as a Crupe officer since 2013, he is not identified as a shareholder. *Id.* Moreover, Simon Peat's declaration is contradicted by his contemporaneous emails and Crupe records. Specifically, in November 2015

---

[4] But even if Kennedy's self-serving statements regarding his undated handwritten modifications are to be believed, his logic is flawed. These loans were made by legal entities and there is no assertion or proof that said legal entities transferred their rights to him. But stay tuned, such a document may yet magically appear.

– *after* the October 3, 2015 Conversion Notice which allegedly made Kennedy a shareholder – Simon Peat sent an email attaching an unofficial registry of Crupe's shareholders. That email and unofficial registry show that Kennedy was not a shareholder even after purporting to sign the October 3, 2015 Conversion Notice in his name. A copy of Simon Peat's email and the relevant portions of the accompanying attachment are attached as Exhibit D. Accordingly, as Kennedy did not personally invested in Crupe, he lacks standing and must be dismissed.

6) **Michèle Robertson Should Be Dismissed As A Defendant**.

Plaintiffs do not address Defendants' legal authorities that show that Michèle Robertson should be dismissed because there was no confidential, contractual, or fiduciary relationship alleged between her and Plaintiffs. Rather, Plaintiffs cite to *Bluesky Greenland Envtl. Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1365 (S.D. Fla. 2013), which is not on point and distinguishable.

*Bluesky* is an outlier. It did not follow well-settled Florida law which requires that for common law fraud or negligent misrepresentation claims based on an omission, there must be a confidential, contractual, or fiduciary relationship alleged between the parties. [*See* Mot., DE 18 at 19-20]. None of those relationships exist here. [Mot., DE 18 at 19-20 (citing *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1351–52 (S.D. Fla. 2005); *Friedman v. Am. Guardian Warranty Services, Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003))].

Next, the facts in *Bluesky* are materially distinguishable from the facts here. In *Bluesky*, the Court denied defendant Gregory Georgas's summary judgment motion because it found there were facts to show that he participated in his *own company's* breach of a fiduciary duty to the plaintiff. *Id.* at 1365-66. Here, unlike the meetings and communications between Georgas personally and plaintiffs in *Bluesky*, there are no similar meetings or communications alleged between Michèle Robertson and Plaintiffs concerning the alleged fraud at issue. [Cmpl., DE 1 at ¶ 6]. In fact, all that Plaintiffs can show is that over five years, there are only *two emails from* Michèle Robertson to Kennedy (none to Plaintiffs Eighteen Seventy and the Marie Kennedy Foundation) and a handful of emails from Kennedy to her. [DE 23-39 to 23-45].That's it.

**CONCLUSION**

Wherefore, Defendants respectfully request that the Court dismiss this case or refer it arbitration for the reasons set forth above and grant any other relief this Court deems just and proper.

10

Date: July 7, 2017

                                  Respectfully submitted,

                                  Eduardo Palmer, P.A.
                                  255 Aragon Avenue, 2nd Floor
                                  Coral Gables, Florida 33134
                                  Telephone: (305) 476-1100
                                  Facsimile: (305) 476-1300

                        By:   *s/ Eduardo Palmer*
                                  EDUARDO PALMER
                                  Fla. Bar No. 0562548
                                  OMAR K. IBRAHEM
                                  Fla. Bar No. 059045

## CERTIFICATE OF SERVICE

      I certify that on July 7, 2017, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document was served on all counsel of record or *pro se* parties in the service list below, either via transmission of Notice of Electronic Filing generated by CM/ECF, or via other means if required.

                        By:   *s/ Eduardo Palmer*_____
                                  EDUARDO PALMER

## SERVICE LIST

*Via CM/ECF*

Hughes Hubbard & Reed LLP

Aviva L. Wernick
Email: aviva.wernick@hugheshubbard.com
Jeffrey B. Goldberg
Email: jeffrey.goldberg@hugheshubbard.com
201 S. Biscayne Boulevard
Miami, Florida 33131-4332
Tel.: (305) 358-1666
Fax: (305) 371-8759

Edward J.M. Little
Email: edward.little@hugheshubbard.com
One Battery Park Plaza
New York, New York 10004-1482
Tel.: (212) 837-6400
Fax: (212) 299-6400

*Counsel for Plaintiffs*